## No. 2246
### Second Circuit Appeal

## COLUMBUS M. JONES v. LOUISIANA CENTRAL LUMBER COMPANY

(May 9, 1925, Opinion and Decree.)
(June 27, 1925, Rehearing Refused.)
(October 6, 1925, Writ of Certiorari to Supreme Court Refused.)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Master and Servant —Par. 158.**
Where it is shown that the injured employee had his foot severely crushed while he was crossing a train of log and box cars, standing in close proximity to the mill where he worked while he was on his way to work, held that the accident occurred while the injured employee was performing services arising out of and incidental to his employment, under Section 1, Subsection 2, of the Workmen's Compensation Act No. 20 of 1914.

2. **Louisiana Digest—Master and Servant Par. 159 (a).**
Where the evidence shows that the injury to the employee makes it impossible for him to walk on the bottom of his foot, he is entitled to compensation for temporary total disability during the period of his disability, not exceeding 300 weeks, under Section 8, Subsection 1 (a), of the Workmen's Compensation Act No. 20 of 1914.
(The recent amendment to Section 8 of Act No. 20 of 1914 is Act No. 216 of 1924. Editor's note.)

3. **Louisiana Digest—Master and Servant Par. 160 (k).**
Under Section 22 of the Workmen's Compensation Act No. 20 of 1914 the court

will limit the attorney's fees to not over one-third of the amount recovered, as anything above this amount would be unreasonably large.

Appeal from the Thirteenth Judicial District Court of Louisiana, Parish of Caldwell. Hon. F. E. Jones, Judge.

This is a suit brought by an injured employee under the Workmen's Compensation Act No. 20 of 1914 to recover compensation for an injury to his foot. There was judgment for the plaintiff and both plaintiff and defendant appealed. Judgment amended and affirmed.

A. L. Allen, of Shreveport; J. T. Long, of Shreveport, attorneys for plaintiff, appellant.

Thornton, Gist & Ritchie, of Alexandria, attorneys for defendant, appellee.

REYNOLDS, J. In this suit Columbus M. Jones seeks to recover from the Louisiana Central Lumber Company judgment for nine dollars per week for three hundred weeks and for $250.00, amount he has paid and expended for medicine or in lieu of hospital and medical services, for an injury in which his foot was severely crushed while he was crossing a train of log cars and box cars standing on a railroad track adjacent to and in close proximity to the sawmill of the Louisiana Central Lumber Company, at which mill plaintiff was employed in the distributing and stacking lumber.

Defendant denied liability on the ground that at the time of the accident plaintiff had not reached the premises of defendant and hence had not begun the day's employment for defendant.

On these issues the case was tried and judgment was rendered for plaintiff for the sum of $9.00 per week during his disability, not exceeding 125 weeks, beginning February 2, 1924.

From this judgment both plaintiff and defendant appealed.

OPINION

The first question presented is whether or not at the time of the accident plaintiff was an employee of defendant, performing services arising out of and incidental to his employment, in the course of his employer's trade, business or occupation.

Defendant required plaintiff to be at the place of his work at 6:50 a. m. The accident occurred at 6:47 or 6:48 a. m. from 30 to 40 feet from the stairway leading from defendant's mill shed to the ground of defendant.

Evidence, page 20:

"Q. How far from the mill platform was it where he got hurt?
"A. Thirty or forty feet.
"Q. Did you have to cross the railroad track in order to get to your work?
"A. Yes, sir.

\* \* \*

Evidence page 8:

"Q. When do the men have to be on the job?
"A. When the work whistle blows at 10 minutes to 7:00 o'clock.
"Q. At the time you got your foot injured had the work whistle blowed?
"A. No, sir.
"Q. What whistles had blowed?
"A. The fifteen-minute and five-minute whistles had blowed."

Evidence, page 9:

"Q. How long after the five-minute whistle blowed before you got injured?
"A. About three minutes."

\* \* \*

"Q. You were on the property of the Louisiana Central Lumber Company?
"A. Yes, sir.
Evidence, page 10:
"Q. Other people cross them there?
"A. Yes, sir.

Evidence, page 12:

"Q. How far were you from the platform of the mill?

"A. About thirty (30) feet.

"Q. How long would it have been before you actually got to your work if you had not been hurt?

"A. About two minutes."

The railroad and the sawmill, as parts of one enterprise, were built by the defendant company. In 1910 the railroad was sold to the stockholders of the defendant lumber company for $2,000,000.00 of the stock of the lumber company, and the two companies operated separately thereafter, insofar as the books were concerned, but as a matter of fact the lumber company remained dependent on the railroad company for logging its mill and hauling its lumber market, and the railroad company remained dependent on the lumber company for 85% of its traffic.

The railroad on which the accident occurred was not only immediately adjacent to the plant of the defendant lumber company but, by means of switch tracks, was connected with it, and in principle the plaintiff was as though upon the actual premises of the defendant, and it was only two or three minutes before plaintiff would have actually gone to work.

The house that plaintiff lived in was on the property of the defendant, and all the ground, from plaintiff's residence to defendant's plant, belonged to defendant, except possibly the right of way of the railroad company, and plaintiff was on his way to his work by the route usually traveled by him and his co-workmen at the mill.

He left his home in time to meet the requirements of the rules of the company requiring him to be at the place of his work 10 minutes before seven o'clock a. m. His way was obstructed by the log cars which were being used to log defendant's mill and which were standing on the track adjacent to defendant's mill.

Plaintiff swears that he looked and that there was no engine attached to the train when he went on same. His testimony on this point has not been disputed.

Under all the evidence in the case, we think plaintiff, at the time of the accident was performing services arising out of and incidental to his employment.

In Prevost vs. Gheens, 151 La. 508, 92 South, 38, our Supreme Court said:

"When an employee is going from his work to his lodging house, on the premises where he works, he is within the meaning of paragraph 2 of Section 1 of the Employer's liability Act, 'performing services arising out of and incidental to his employment in the course of his employer's trade, business or occupation."

Gregory vs. Standard Oil Co., 151 La. 228, 91 South. 717.

In Cudahy Packing Co. vs. Parramore, 263 U. S. 418, the court says:

"On the morning of August 9, 1921, he rode to the plant in the automobile of another employee, for the purpose of going to work. The automobile crossed over two of the railroad tracks and when upon that of the Rio Grande was struck by an engine and Parramore was instantly killed. This happened about seven minutes before the time when his service as an engineer was to begin."

* * *

"The railroad over which the way extended was not only immediately adjacent to the plant, but, by means of switches, was connected with it, and in principle it was as though upon the actual premises of the employer.

"We attach no importance to the fact that the accident happened a few minutes before the time Parramore was to begin work, and was therefore, to that extent, outside the specified hours of employment. The employment contemplated his entry upon and departure from the premises as much as it contemplated his working there, and must include a reasonable interval of time for that purpose.'

As to the injury received, the plaintiff testified, pages 4 and 5:

"Q. Is there anything gone from your foot?

"A. Yes, sir, two toes and the bone at the side of the foot is gone.

"Q. What toes are gone from your foot?

"A. The two little toes.

"Q. What bone is gone?

"A. A bone that the little toes were on."

* * *

"Q. Is that foot as large around as the other foot?

"A. It might be—it is as thick because it is swelled now, but it is not as wide.

"Q. You say a bone was removed from that foot?

"A. Yes, sir the one that the little toe was on.

"Q. How far back was that bone removed?

"A. I don't know whether it was all taken out or not—they took the toes off.

"Q. Can you bear any weight on that foot?

"A. On the heel and big toe I can.

"Q. Can you walk on it?

"A. Very little—I can't walk on the bottom of my foot.

"Q. Have you used a crutch ever since you were hurt?

"A. Yes, sir."

Dr. S. G. Hines testified, page 66:

"Q. How long have you been practicing medicine and surgery?

"A. About fifteen years.

* * *

"Q. You are connected with Dr. Gardner in the mill practice there?

"A. Yes, sir.

* * *

"Q. Did you and Dr. Gardner have occasion to treat Mr. Jones, the plaintiff in this suit, when he was injured February this year?

"A. Yes, sir.

"Q. Please state his injury and the extent of it?

"A. He had a foot that was pretty badly mashed up and the loss of the two small toes and the corresponding bones of the foot. The whole bottom part of his foot was mashed and the fourth and fifth toes and the metatarsal bones of the foot were destroyed.

"Q. Were the metatarsal bones extending from the large toe and the two toes next to the large toe destroyed?

"A. The large toe and the other one was not but the third toe was broken—the large toe and the next one to it I don't think were injured. The third toe was broken and the small toe and the next one to it were removed.

"Q. What have you to say with reference to the extent of whether or not this plaintiff has entirely lost his foot or whether or not he will have the use of his foot in the future?

"A. We feel that he will have some use of it.

"Q. You feel that it would not be advisable to amputate the foot?

"A. Yes, sir; it is better than no foot at all.

"Q. You feel that in time he will again be able to use that foot?

"A. In a reasonable length of time he will. There will possibly be some impairment though. He will limp and it will possibly not be as strong, but it beats a stump. Of course there is a lot of scarry tissue and it will be slow in getting tough. At this time no one can tell just how much impairment will exist.

"Q. You think it will gradually improve for some time?

"A. Yes, sir."

We think, under this evidence, that at the time of the trial of the case plaintiff's injury was producing temporary total disability to do work of any reasonable character and that he was entitled to judgment for the amount named in the judgment of the lower court during the period of his disability, not exceeding 300 weeks.

The next question to be discussed is as to plaintiff's demand for $250.00 claimed in the prayer of his petition for the amount spent and expenses incurred for or in lieu of medical services and medicine.

The evidence does not show that the plaintiff spent any amount on account of this alleged item. Hence this portion of plaintiff's demand must be denied.

This brings us to the attorney's fees. Plaintiff asks in his petition that his attorneys be allowed for their services in this case 50% of the amount of any judgment recovered.

Section 22 of Act 20 of 1914 provides:

"That claims or payments due under this act shall not be assignable and shall be exempt from all claims of creditors and from levy or execution or attachment or garnishment except under a judgment of court for alimony in favor of a wife or ascendant or descendant. Fees of attorneys and physicians for services under this act shall be reasonable and measured according to the workmen's station and shall be approved by the court."

Under this act we feel it is our duty to limit the attorney's fees in this case to not over one-third of the amount allowed in the judgment.

For these reasons., it is ordered, adjudged and decreed that the judgment appealed from be amended and it is now ordered adjudged and decreed that plaintiff, Columbus M. Jones, do have a recover judgment against Louisiana Central Lumber Company for the sum of nine dollars per week during his disability, not exceeding. three hundred weeks, beginning February 2, 1924, with 5% per annum interest on each weekly payment from its maturity until paid.

It is further ordered, adjudged and decreed that the fee of Dr. Brown, as an expert witness be fixed at $10 and taxed as costs in this case.

It is further ordered, adjudged and decreed that the fees of plaintiff's attorneys in this case be approved for one-third of the amount of the judgment herein.

Defendant to pay all costs in both courts.