No. 2391
Second Circuit Appeal.

———

LOUIS W. WYATT v. ALABAMA PETROLEUM CORPORATION, INC.

———

(June 30, 1925, Opinion and Decree.)

———

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Master and Servant—Par. 158.**
Where injured employee, suing under Employers' Liability Act No. 20 of 1914, had left the place at which he was at work and was on his way home when the accident occured; held, that accident did not occur while injured employee was working for defendant in the scope of his employment.
(See Section 1, Subsection 2, of Act 20 of 1914. Editor's note.)

2. **Louisiana Digest—Appeal—Par. 625.**
The judgment of the trial court on questions of fact being clearly correct' is affirmed.

Appeal from First Judicial District Court of Louisiana, Parish of Caddo, Hon. T. F. Bell, Judge.

This is a suit to recover compensation under Employers' Liability Act No. 20 of 1914.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Long & Crow, of Shreveport, attorneys for plaintiff, appellant.

E. W. and P. N. Browne, of Shreveport, attorneys for defendant, appellee.

REYNOLDS, J. In this case Louis W. Wyatt sues to recover compensation under the Workmen's Compensation Act at $18.00 per week during disability, not exceeding 400 weeks, and for like amount for not exceeding 100 weeks additional, and for $250.00 doctor's bill, for an injury, consisting of a burn on the head, face and arms and eye and ears as a result of a gas explosion on the 18th day of November,

1924, while in the course of his employment by defendant.

By amended petition plaintiff asks that he be allowed compensation at the rate of $20.00 per week instead of $18.00 per week.

Defendant denied liability.

On February 12, 1925, the case was tried, and on March 12, 1925, the District Judge, *ex proprio motu*, ordered the case reopened.

On the second trial judgment was rendered in favor of defendant and plaintiff has appealed.

### OPINION.

In this case the question presented for our determination is whether or not the accident causing the injuries complained of occurred while plaintiff was working for defendant in the scope of his employment.

The evidence shows that after the plaintiff had completed his day's work and had been relieved from all responsibilities of his employment he left the place at which he was at work and went on his way home a half mile to a place near the pump at which the accident occurred.

The place where the accident occurred was near a crossing over Dorcheat Bayou.

As to whether or not plaintiff was still engaged in the course of his employment at the time of the accident.

W. M. Lambert, the superintendent under whom plaintiff was at work, testified (page 7 of the last testimony taken).

"Q. Now, at the time that he was injured was he upon the property where he had been employed?
"A. No, sir.
"Q. How far away was he?
"A. Right at half a mile.
"Q. Half a mile?

(Page 8):

"A. Yes, sir, on a different lease.
"Q. Now, did Mr. Wyatt have any duties to perform in connection with the pump near where he was injured?

"A. No, sir, none whatever. He had nothing whatever to do with this pump. He was employed to pack and keep the pumps up in the treating plant and we had two special men that stayed there and watched those two pumps and kept them going. Mr. Wyatt was employed on the Pardue lease. He had nothing to do with those pumps whatsoever. We kept two men there that looked after those and we kept two men at the treating plant that looked after the pumps, and Mr. Wyatt's duty was to look after those pumps. I took charge, you understand, on the 15th, and he was burned two days afterwards.
"Q. Now was Mr. Wyatt at the pump where he was injured at the time of his injury in pursuance of any duty to the company?
"A. He had been left off duty and came to this pump and crossed the log there and lost his way, then came back and lighted a torch and walked out when he was burned.

Cross-examination, page 10.

"Q. Now, don't you know that the first piece of work he did was on this particular pump at which he was injured?
"A. He may have been at that time, but later on he was changed from that job to another job. His business was to look after the pumps and keep them repaired, that is the pumps in the treating plant. That was his job and the water pumps I had two men there employed to look after them and nothing else.

(Page 11):

"Q. Now, how far was this pump from their lease, would you say?
"A. Well, it is a good half mile I would think, probably not quite so far.
"Q. Now these pumps were kind of scattered along?
"A. No, sir, those were the only pumps that were off to themselves, and I had special men to look after them.

T. R. Birdsong testified as to the place of the accident, page 21.
"Q. Now state with reference to the premises on which he was actually working,—regarding those premises as being the location of his actual work,—whether, or not, Mr. Wyatt was on the premises of his work at the time that he was hurt?
"A. No, sir, he was not.
"Q. He was not on the premises?
"A. No, sir, he was not on the premises.

Plaintiff testified as to the place of the accident.

Page 22, of the first testimony taken.

"Q. You say you were actually injured while you were going to your home after you quit work for the day?

"A. Yes, sir.

"Q. And that you were injured on the public road?

"A. Public passage way."

This testimony, we think, sustains the finding of the lower court that the accident occurred after plaintiff had quit work and left the premises of the defendant.

Plaintiff insists in his testimony that his employment included keeping in repair the pump near which the accident occurred; but W. M. Lambert, superintendent for defendant, under whom plaintiff was at work, testified positively that plaintiff's work was at the treating plant about one half mile from the scene of the accident and that he was not employed to look after the pump near the scene of the accident.

Plaintiff insists that he visited the location of this pump near the scene of the accident on the morning of the accident, but he admits that at the time of the accident an important change had been made in the exhaust of the pump and that a pipe 20 feet long had been provided through which the pump exhausted and that he knew nothing of this repair.

He says, on page 18.

"Well, in fact at the time I had none— I had none because the last time I knew of the exhaust it was exhausting out at the pump without any pipe, which was probably two and a half feet out of a two-inch pipe, and this pipe had been put on there so it was about twenty feet out to the end."

(Page 3):

"Q. Now you stated before they had been allowing the gas to escape without any exhaust pipe?

"A. Yes, sir.

"Q. And just before this they had put on the exhaust pipe which extended out?

"A. Yes, sir.

"Q. And you did not know it was there and passed along?

"A. Yes, sir, I did not know that it was there."

This testimony of the plaintiff we think clearly corroborates the testimony of W. M. Lambert that he had two other men in charge of the pump near the scene of the accident and that plaintiff's work was not at or near the scene of the accident. The judge of the lower court, who saw and heard the witnesses testify, so held, and we think his holding was correct.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be affirmed.