## GERSTMAYR v. KOLB. *
### No. 14887.

Court of Appeal of Louisiana. Orleans.
Jan. 21, 1935.

J. A. Woodville, of New Orleans, for appellant.

Wm. H. Talbot, of New Orleans, for appellee.

LECHE, Judge.

This is a suit for damages under article 2315 of the Civil Code. Plaintiff alleges that he was employed by defendant to do certain painting and decorating at the latter's home on Gentilly road in the city of New Orleans. He alleges that, while engaged in painting the outside of defendant's house, a stepladder furnished him by defendant broke, causing him to fall to the ground, and resulting in serious personal injuries. He alleges that he was paid $7.70 per week for nine weeks, or a total of $69.30.

Defendant filed exceptions of no cause or right of action, which were overruled. He then filed a plea of estoppel, alleging payment by his insurer of compensation for a certain number of weeks and certain medical expenses. He alleges that plaintiff had signed receipts for the weekly compensation, and at the end of the period signed a final receipt for compensation. Defendant further alleges that this bars plaintiff from any further actions growing out of the accident.

The plea of estoppel was maintained, and from this judgment plaintiff appeals.

This case clearly does not come under the Workmen's Compensation Law (Act No. 20 of 1914, as amended). There is no allegation or proof that defendant was engaged in a hazardous occupation, or that plaintiff and defendant agreed to come under the provisions of the statute. Shipp v. Bordelon, 152 La. 795, 94 So. 399; White v. Equitable Real Estate Co., 18 La. App. 714, 139 So. 45; Blane v. Iglehart, 5 La. App. 17; Jarrell v. Ewing, 7 La. App. 502.

The question, therefore, to be decided is whether or not payment to or receipt by plaintiff of weekly compensation for a number of weeks bars an action by him under article 2315 of the Civil Code.

Plaintiff testified that he could read and write, but that he signed the receipts for compensation without reading them, believing them to be only receipts for the amount received and in no sense final or conclusive. It must be borne in mind that all of the receipts were for compensation only, and that the last receipt signed by plaintiff was not a receipt in full and complete settlement of any and all claims, etc., growing out of the accident, but only a receipt for final compensation.

In the case of Gray v. N. O. Dry Dock & Shipbuilding Co., 146 La. 826, 84 So. 109, 111, the plaintiff sued for damages under article 2315 of the Civil Code. He fell from a scaffold and was seriously injured while working in the employ of defendant. After the accident, the defendant, through an indemnity company (by whom defendant was insured against employer's liability for such accidents), made weekly payments of compensation at $10 a week for 24 weeks, assuming that plaintiff was entitled to compensation under the Employers' Liability Act. On rehearing Chief Justice O'Niell, as the organ of the court, in his statement of the facts of the case, said: "When plaintiff was well enough to get about, he called upon the president of the dry dock company, and asked what effect his receiving the payments of compensation would have upon his legal right in the premises; and, having called in the agent of the indemnity company, and in pres-

ence of the latter, the president of the dry dock company assured plaintiff that he was entitled to compensation at $10 a week during his disability to work, and that his acceptance of the payments would not be construed as a waiver or abandonment of any claim that he might have against the dry dock company. The president of the dry dock company and the agent of the indemnity company were then of the opinion that the case was governed by the Employers' Liability Act, and not by the general law of torts; *and it appears that the only question in their mind was whether plaintiff was entitled to compensation for permanent total disability or only for temporary total disability."* (Italics ours.)

It can be clearly seen from the above that there was no question as to whether that case came under the Employers' Liability Act or under the general law of torts, but that the only question in the minds of plaintiff and defendant was whether or not plaintiff was entitled to *compensation* for permanent total disability, or *compensation* for temporary total disability under the Employers' Liability Act. The statement of facts continues: "Thereafter, having indorsed and cashed 19 or 20 of the voucher checks of $10 each, plaintiff consulted an attorney, who at first was also of the opinion that the case was governed by the Employers' Liability Act, which, if applicable, would exclude any and all other rights or remedies."

This shows conclusively that not only was plaintiff in that case under the impression that his injury came under the Employers' Liability Act at the time he consulted his attorney, but that his attorney was also of the same opinion. The statement of facts continues: "Averring that the plaintiff had received and cashed the checks paid for compensation under the Employers' Liability Act, defendant pleaded that plaintiff was *estopped and debarred* from denying that the case was governed by the statute, and pleaded that plaintiff could not maintain an action for tort without having returned the amount which he had received for compensation under the Employers' Liability Act." (Italics ours.)

Although, as shown above, the court found that defendant told the plaintiff that receiving weekly compensation would not be construed as a waiver or abandonment of any claim that he might have against the dry dock company, both plaintiff and defendant had in mind only the question of amount of compensation and not the question as to whether or not the case came under the Compensation Law, or article 2315 of the Civil Code. However, in deciding the point, the court did not take this into consideration, or deem it of any importance, but said without qualification:

*"There is no merit in defendant's contention that plaintiff was estopped by his conduct in accepting and retaining the payments of compensation for the several weeks of total disability.* The defendant, or rather the indemnity company, paid only what was then conceded to be due to plaintiff, and what is yet conceded to have been due him at that time, regardless of what might yet be due. *The defendant or the indemnity company was in no worse position, and is yet in no worse position, for having made the payments, even though the defendant and the indemnity company believed then that each payment was all that was due at the time.* A debtor cannot discharge his debt by paying a part which he concedes to be due, unless the creditor agrees to accept the part in satisfaction of the whole debt. Plaintiff's claiming all that he believes is due him now is not inconsistent with his having received the part which defendant conceded was then due. *There is therefore no element of estoppel in this case. Nor can the plea be sustained as one of compromise or settlement.* A transaction of compromise must be mutually accepted by the parties, for the purpose of preventing or putting an end to a lawsuit, in preference to the hope of either party of gaining and the risk of losing. To be effective, such agreement must be reduced to writing. R. C. C. art. 3071. *And the Employers' Liability Act (section 17) requires the decree of a competent court, on the joint petition of the employer and employee, verified by both parties, to settle or compromise a claim for compensation.* There was no settlement, nor agreement of settlement, between the plaintiff and defendant in this case, because, while the indemnity company was making payment of what defendant conceded was due at the time, there was a dispute as to the total sum that would have to be paid in the future; which dispute was not settled when this suit was filed. Defendant relies upon the decision in Summers v. Woodward, Wight & Co., 142 La. 241, 76 So. 674, in support of the argument that the plaintiff is estopped and bound to abide by the Employers' Liability Act. But the ruling in the case cited is not pertinent to this case. The ruling was that the employer had, by making payments of compensation under the Employers' Liability Act, and by accepting reimbursement or indemnity from the insurance company, admitted liability under the statute. *The question presented in that case was*

*whether the defendant owed compensation under the Employers' Liability Act or owed nothing. The question presented now is whether the defendant owes compensation under the Employers' Liability Act or owes full indemnity under the general law of damages arising ex delicto.* In the case cited, the admission made by paying indemnity under the Employers' Liability Act was an admission against the payor's interest. In the case before us, the admission is invoked as evidence in favor of the defendant who made the admission. In the case cited, the fact that the defendant had made payments of compensation under the Employers' Liability Act was not held to be an estoppel, technically speaking, but was held to be an admission that the business in which the defendant was engaged at the time of the accident was a hazardous business or occupation, within the purview of the Employers' Liability Act; for that question of fact was the only question at issue in the case." (Italics ours.)

In the case at bar the situation is practically the same. Defendant thought that plaintiff was entitled to workmen's compensation, and plaintiff thought that he was entitled to workmen's compensation, and weekly compensation was, in fact, paid by defendant's insurer and received by plaintiff; and, while it is true that plaintiff did not ask defendant if receiving compensation would be a waiver of his rights, when asked if he offered to return the money received, he answered: "No, I spoke with Mr. Kolb and he said, 'Well, that's all up to the insurance company and you,' and I didn't go back to the insurance and the insurance didn't notify me," and it will be noted that in the Gray Case, supra, it was only *after* plaintiff had been receiving the payments of compensation that he called upon the president of the dry dock company and inquired if such payments would operate as a waiver or abandonment of his claim, and the court found that the question in the minds of both parties *involved only additional workmen's compensation.*

We believe the above case conclusive of the question presented here. However, there is an additional circumstance which confirms us in our opinion. Some six years after the decision in Gray v. N. O. Dry Dock & Shipbuilding Co., supra, we find the following amendment to have been incorporated in the Compensation Law by Act No. 85 of 1926, § 18, par. 5: "Neither the furnishing of medical services nor payments by the employer or his insurance carrier shall constitute an admission of liability for compensation under this act."

In the case of Foret v. Paul Žibilich Co., 18 La. App. 363, 137 So. 366, 367, after payment by its insurer of compensation for a certain number of weeks, the insurer then becoming insolvent, suit was filed against the defendant company for additional compensation. Defendant claimed the Employers' Liability Act did not apply, and plaintiff urged estoppel on the basis of the compensation already paid. This court quoted the above paragraph of the act of 1926 and said: "The language quoted is very clear and entirely inconsistent with the estoppel based upon the previous payment of compensation, the fact relied on in this case in support of the plea."

If the payment of compensation under the terms of this section of the act does not constitute an admission of liability for compensation, it does not constitute such admission either on the part of the employer or employee, neither being bound thereby, and, consequently, forms no basis for a plea of estoppel.

The judgment appealed from is hereby annulled, avoided, and reversed, and it is now ordered that this case be remanded to the civil district court for further proceedings according to law and not inconsistent with the views herein expressed.

Reversed and remanded.

JANVIER, Judge (dissenting).

When the employer and employee, after the injury had been sustained, agreed that the facts brought the matter within the contemplation of the Workmen's Compensation Laws, they made a mistake of law.

It is a well-known legal principle that error as to legal rights may not be availed of to avoid the effect of agreements voluntarily entered into and completely executed by both parties.

In a case identical in legal principle the Court of Errors and Appeals of New Jersey, in O'Brien v. Det Forende Damphibs Selskab, 94 N. J. Law, 244, 109 A. 517, 518, said: "We think the mistake clearly one of law. Both parties knew under what circumstances the employee, O'Brien, was killed, and what he was working at, and where, when the accident happened. There was no mistake about any of the facts. They both thought, however, that the legal result of these facts was that the defendant was liable to pay compensation under the New Jersey Workmen's Compensa-

tion Law. In this view of the law they were mistaken. But their mistake was a mistake of law, and does not invalidate the contract which they entered into while laboring under it, if that contract rests upon a valid consideration and was entered into voluntarily."

In article 1846 of the Civil Code appears the following: " * * * A contract, made for the purpose of avoiding litigation, can not be rescinded for error of law. * * *"

Though the facts may have created in plaintiff a right to sue in tort, there was no reason why he could not make any agreement he might see fit looking to the settlement of his tort case, and, when he and the employer agreed to settle on the basis of the compensation laws, they were within their rights in so doing. When they went further and actually made the settlement and plaintiff executed a receipt marked "Final," neither should now be heard to say that he was ignorant of his legal rights. It is not charged that any unfair practices or misrepresentations were resorted to.

If the facts of this case brought it within the doctrine announced by the Supreme Court of Louisiana in Gray v. New Orleans Dry Dock & Shipbuilding Co., 146 La. 826, 84 So. 109, my views would readily yield, of course, but I find at least one fundamental difference which distinguishes that case from the case at bar. Here the settlement had been completely carried out, and the employee, who, admittedly, could read and write, had signed a receipt bearing in large type the word "final." In the Gray Case there had been no completion of the settlement.

Though I would, of course, cheerfully and dutifully accept the views expressed in the Gray Case if I thought those views applicable and controlling here, still I could not banish the thought that no significance should have been attached to the fact, referred to in the Gray Case, that the parties failed to secure judicial approval of their agreement to settle. The court felt that that agreement to settle could be given no consideration because it had not been so approved.

If, as a matter of law, the liability, if any, had been in compensation, then the court's approval would have been necessary, but the liability, if there was any, was not in compensation, and, as a necessary result, it follows that whatever agreement the parties might have reached did not require judicial approval.

Nor can I resist respectfully suggesting that, when it was stated in the Gray Case

that in any event the payments which the employer had made under the agreement to settle on the basis of the Compensation Act had created no prejudice to the employer's rights, because the court felt that in either case it was liable to the employee for some amount, there was an overlooking of the fact that it had not been determined that there was any liability in tort; and, had there been a demand for damages ex delicto, the employer might have denied liability, in which event it could not properly have been said that at the time the employer made payments under the compensation agreement it was only paying what it owed in any event.

But I feel, as I have said, that the execution of the "final receipt" distinguishes this case from the Gray Case and estops plaintiff here to assert any other or different claim than that for which he has received the final payment.

I therefore respectfully dissent.