## THOMAS v. SHIPPERS' COMPRESS & WAREHOUSE CO., Inc.

### No. 14954.

Court of Appeal of Louisiana. Orleans.

Feb. 4, 1935.

John E. Fleury, of Gretna, for appellant.

Leo W. McCune, of Gretna, and J. G. Dempsey, Jr., of New Orleans, for appellee.

LECHE, Judge.

Plaintiff filed this suit for damages for personal injuries resulting from a blow administered by a trailer attached to defendant's

truck, while crossing the bridge spanning the Seventeenth Street Canal at the head of South Claiborne avenue. Defendant's answer amounted to a general denial. On the day of the trial, approximately one year after the date the petition was filed, defendant filed a plea of estoppel, alleging that since the time of the injury defendant's insurer had paid, and plaintiff had accepted, workmen's compensation in the sum of $20.86; that plaintiff was estopped from claiming damages and praying that his suit be dismissed. The case was tried and judgment rendered in favor of plaintiff in the sum of $1,500, subject to a credit of the $20.86 paid as compensation. A motion for a new trial was denied, and defendant has appealed.

We first direct our attention to the question of estoppel. If this case falls under the Employers' Liability Act (Act No. 20 of 1914, as amended), there is no question but that plaintiff is estopped from bringing this action under article 2315 of the Civil Code, as the terms of the Employers' Liability Law make the remedies therein provided exclusive in cases where the law applies. On the other hand, if this case does not come under the terms of the Employers' Liability Act, the mere fact that the defendant or his insurer has paid, and plaintiff accepted, weekly compensation, does not preclude him from his rights under the general law of torts under our ruling in the case of Gerstmayr v. Kolb, 158 So. 647, opinion rendered Monday, January 21, 1935.

The Seventeenth Street Canal divides the parishes of Orleans and Jefferson. The bridge is a prolongation of South Claiborne avenue, and connects it with the highway in Jefferson parish above the canal. Defendant's plant is located in Jefferson parish not far above the bridge, and plaintiff, in order to reach his home in Orleans parish, used this bridge as the most convenient one. Plaintiff was in the employ of defendant, and on the day of the injury had finished his work, left his employer's premises, and was returning home via the bridge. One of defendant's trucks, operated by another of its employees, was returning to the plant from New Orleans via the bridge, and it was while this truck was passing plaintiff on the Jefferson parish side of the bridge that the injury occurred.

The following jurisprudence is pertinent to the question here involved:

In the case of Ward v. Standard Lumber Company, 4 La. App. 89, the court said:

"As to the liability of the defendant, it is contended that the accident did not arise in the course and out of the employment for the reason that it occurred on the public highway and from a hazard or risk to which the plaintiff, as well as all other persons who used the highway, were subjected.

"There is no exact rule by which it may be determined whether or not any given accident in which an employee is injured arose in the course and out of the employment, but the relationship of the accident to the employment must be determined with reference to the facts in each case.

"The evidence in this case shows the plant or premises of defendant where plaintiff was employed was located adjacent and contiguous to the highway over which the employees had access to the premises, and that plaintiff, who was on his way to lunch at the noon hour, while crossing the highway at a point contiguous to the premises, was struck by an automobile being driven by its owner, who was an employee of defendant and fellow employee of plaintiff, and who was at the time leaving the premises on his way to lunch.

"We are of the opinion that the place of the accident, being in close proximity to the place of employment and being the way over which plaintiff had access to the premises, and the time to have been when he was leaving the premises for lunch, the accident arose in the course of the employment. (Jones v. Louisiana Central Lumber Company, 2 La. App. 260; Cudahy Packing Co. v. Parramore, 263 U. S. 418 [44 S. Ct. 153], 68 L. Ed. 366 [30 A. L. R. 532]). And that the risk of crossing the highway, being increased by reason of its use at the time of the accident by the fellow employee of plaintiff, the plaintiff was subjected to a greater hazard by reason of the employment than would have been the case for one not thus engaged, and that the accident arose out of the employment. (Myers v. La. Ry. & N. Co., 140 La. 937, 74 So. 256; Dyer v. Rapides Lumber Co., 154 La. 1091, 98 So. 677; Ferguson v. Cady-McFarland Gravel Co., 156 La. 871, 101 So. 248.)

In Bass v. Shreveport-Eldorado Pipe Line Company, 4 La. App. 107, Judge Odom treated the question as follows:

"Under such circumstances we do not think the accident which caused the loss of the plaintiff's eye arose in the course of his employment. His day's work was done and he had ceased to labor. He had been paid off and was on his way home. He was not at or anywhere near the place where he worked and was not on or near defendant's premises. The accident did not occur during the period of his employment.

"In a Corpus Juris treatise on workmen's compensation acts, Mr. Donald J. Kiser says, at page 80:

" 'It has been said that in general terms an injury to an employee arises in the course of his employment when it occurs within the period of his employment, at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment or engaged in doing something incidental thereto.'

"And further, on page 81:

" 'The period of employment is not confined to the period for which wages are paid, and may extend beyond the hour of the employee's actual labor, the relation of master and servant existing wherever the servant is under the master's control and subject to his directions.'

"In the case at bar the plaintiff was not reasonably fulfilling any of the duties of his employment, nor was he engaged in doing something incidental thereto. He was not at the time under defendant's control nor subject to its directions. Plaintiff was not at the time working at all. He had quit work, had been paid off, and was going home. The only theory under which it could be urged that plaintiff was entitled to recover is that injuries received by laborers while on their way to or from their work may be said to arise out of and in the course of their employment.

"As a general rule, the relation of master and servant ceases when the servant leaves the place of his employment at the close of a day's work to go to his home. * * *

"A reading of the cases cited, where the courts have held that an accident to an employee, while riding to or from his work, arises out of and during the course of his employment, will disclose that in such cases the transportation was furnished by the employer as an incident of the contract of employment or was part of the consideration therefor. But, so far as we have been able to find, no court has held that an employee was entitled to compensation when injured on his way to or from his work unless he was being transported by the employer under circumstances as above outlined. * * *

"In the case at bar, the plaintiff's work was finished for the week and he had been paid off; he was on his way home when the accident happened, and was more than a mile from defendant's premises. He was entirely out of his employer's control and was not where he was performing or where he could perform any service for his employer; he was riding on a conveyance not used to carry him as an incident of his employment or as part of his compensation, but he was permitted to ride on it as a matter of accommodation; he was not on his way to living or boarding quarters furnished or controlled by the employer as an incident of his employment or part of his compensation; he was on his way to his own home. Under such circumstances, the accident did not arise out of or in the course of plaintiff's employment nor was it an incident thereto, and therefore he is not entitled to recover."

In the case of Nugent v. Lee Lumber Company, 4 La. App. 371, Judge Webb said:

"That on the date of the accident the decedent, after completing the day's task, requested a driver of a truck belonging to Hamilton to carry him from the corral to decedent's home, on the truck, which request was acceded to by the driver, and while decedent was being thus transported he in some manner lost his balance and fell from the truck (which was at that time on the public road and about one-half mile from the corral), receiving injuries which caused his death. * * *

"If the employer is liable under the facts presented, it is for the reason that the accident occurred while he was returning home from his work, but we have not been cited to any decision in which such a broad construction has been placed on the statute.

"It cannot be said from the situation of the place of the accident that there was any causal connection between it and the risks or hazards incident to the place of employment as was the case in Gasca v. Texas Pipe Line Co., 2 La. App. 483, or Jones v. La. Cent. Lumber Co., 2 La. App. 260, or Prevost v. Gheens Realty Co., 151 La. 508, 92 So. 38; and we are of the opinion that when the decedent took his seat upon the truck for the purpose of being transported and had left the premises the relations between him and Hamilton had ceased and the accident cannot be said to have arisen in the course of the employment."

In the case of Baker v. Texas Pipe Line Company, 5 La. App. 25, it was said:

"We do not think it material so far as defendant's liability is concerned whether plaintiff was knocked off the truck by his body coming in contact with the gate post or whether he slipped off after having gotten on it. The evidence shows that plaintiff was leaving his employer's premises at the close of the day's work and that the entrance at which he was hurt was one commonly used by defendant's employees in leaving the premises, whether walking or riding.

"Defendant insists that under the authority of Wyatt v. Alabama Petroleum Corp., 2 La. App. 499, it is not liable.

"In our opinion that case and the case at bar are not analogous.

"In the Wyatt Case, the employee, at the time he was injured, had finished the day's work and left the premises of the employer, had travelled from a quarter to a half mile from his place of work, had crossed Dorcheat Bayou, and had turned aside from the path leading from his place of work to his boarding house.

"In the present case, plaintiff had just finished the day's work and was leaving the premises of his employer and had not loitered on the premises or otherwise delayed his departure, when the accident occurred. * * *

"We are convinced that, under all the circumstances of this case, the accident complained of arose out of and was incidental to plaintiff's employment.

"Baltimore Car Foundry Company v. Ruzicka, 132 Md. 491, 104 A. 167, 4 A. L. R. 115.

"Prevost v. Gheens Realty Co., 151 La. 508, 92 So. 38.

"Myers v. La. Ry. & Nav. Co., 140 La. 937, 74 So. 256.

"Lagrone v. McIntyre Lumber Co., 1 La. App. 564."

In LeBlanc v. Ohio Oil Co., 7 La. App. 721, the court said:

"The plaintiff resided at a boarding-house with which defendant was not connected, situated on or near the highway about a mile from the lease, and plaintiff had been accustomed to using the highway in going to and from his work, sometimes walking and at other times riding, in vehicles belonging to third persons, and on the day of the accident plaintiff left his boarding-house at about half past six o'clock in the morning and had been allowed to ride in an automobile owned and driven by a third person to the lease, arriving there sometime between half past six and seven o'clock, that the automobile was stopped at a point on the highway opposite the tool house, where plaintiff alighted, and while passing over the roadway from the place where he alighted from the automobile towards the tool house, he was struck by an automobile which was being driven along the highway by some one who was not connected with defendant.

"While plaintiff recognizes the general rule that an injury to an employee on the public highway in going to or returning from the place of his employment does not arise in the course or out of the employment, he urges that the facts bring this case within equally as well recognized exceptions to the general rule, citing Cudahy Packing Co. v. Parramore, 263 U. S. 418 [44 S. Ct. 153], 68 L. Ed. 366 [30 A. L. R. 532]; Jones v. Louisiana Central Lumber Co., 2 La. App. 260, and Prevost v. Gheens, 151 La. 508, 92 So. 38. * * *

"While the place of the accident was upon the public highway, and the accident was directly attributable to a risk which was common to all persons using the highway, these facts do not necessarily preclude recovery, provided it can be said that the employment resulted in exposing plaintiff to the risk beyond that to which the public was subjected (Cudahy Packing Co. v. Parramore, supra; Katz v. Kadans & Co., 232 N. Y. 420 [134 N. E. 330], 23 A. L. R. 401), or that it can be said the accident occurred on the employer's own premises (Cudahy Packing Co. v. Parramore; Jones v. Louisiana Central Lumber Co., and Prevost v. Gheens, supra). * * *

"In addition to the facts previously stated, the evidence, we find, shows that the highway was the only practical way of immediate ingress and egress to and from the premises, and it appearing that the employment of plaintiff required the use of the highway at the point where the accident occurred in the performance of his work, we are of the opinion that the place of the accident should be considered as on the premises of the employer and the accident to have arisen in the course and out of the employment, and the defendant held liable under the statute."

In Thibodeaux v. Yount Lee Oil Company, 13 La. App. 591, 128 So. 709, Judge Le Blanc, as the organ of the court, said:

"From a judgment in the lower court dismissing his claim for compensation under the Workmen's Compensation Law (Act No. 20 of 1914, as amended), on an exception of no cause of action, the plaintiff has appealed. * * *

"Before the matter was submitted to the lower court on the exception the following admission was placed in the record: 'Plaintiff admits that immediately after he got off his work at five o'clock p. m. at the oil field he started directly for his home and took the nearest and usual route and the only practical way from his work to his home. That his home was situated approximately two hundred steps from the public highway and upon turning out of the public highway into a path leading to his house and upon reaching a point approximately twenty-five steps from his home he stepped on a nail in a board which was lying in the grass in or

near the path, causing injuries set out in his petition.'

"It is apparent that we are here confronted with the question of the employer's liability for compensation to an employee who is injured while returning from his work, while he is off of the premises of the employer.

"There are decisions in our Louisiana courts as well as in other jurisdictions which tend to create considerable confusion and require the drawing of fine distinctions in determining the question as to how far such injuries arise out of and in, the course of the employment. To attempt to classify them all would be to undertake an almost insurmountable task, and one which would not serve much purpose, as in the very early history of our own jurisprudence on the subject, our Supreme Court, in the case of Myers v. La. Ry. & Nav. Co., 140 La. 938, 74 So. 256, 258, remarked: 'However after vain attempts at formulating some verbal test for determining when the injury has or not arisen out of the employment, the courts have come to the conclusion that each case must be determined from its own facts; that the question cannot be solved by phrases.'

"If any rule is to be extracted from the numerous cases we have examined on the particular point involved here, it is to the effect that, where the employee is injured in going to or from work while he is still on the employer's premises, or is injured in a conveyance furnished by the employer to transport him to and from work, his claim is compensable; but, where the injury occurs while he is off of the premises of the employer, it is not. * * *

"With regard to those cases involving injuries to employees going to or returning from work while they are away from the employer's premises and in which compensation was allowed, we find, on examination, that generally the place where the accident occurred is in such close proximity to, or so connected with, the premises that, in principle, it may be considered as having happened on the actual premises of the employer, and consequently to have arisen in the course of the employment. Expressive of this principle is the case of Cudahy Packing Co. v. Parramore, 263 U. S. 418, 44 S. Ct. 153, 68 L. Ed. 366, 30 A. L. R. 532, which has been cited as authority in several of our Louisiana cases, notably LeBlanc v. Ohio Oil Co., 7 La. App. 721; Ward v. Standard Lumber Co., 4 La. App. 89; Jones v. Louisiana Central Lumber Co., 2 La. App. 260, and others.

"The general rule, however, without regard to any distinctions having to be made, or fine points drawn, is to the effect that injuries resulting from accidents occurring away from the employer's premises are not considered as having any causable connection with the employment and are not compensable. Besides, the dangers or risks from which such injuries arise are, as a rule, not incidental or peculiar to the nature of the employment, but are those that are common to the neighborhood, and, as such, they do not come under the protection of the Compensation Law.

"The following citation is taken from Ruling Case Law, Permanent Supplement, volume 8: 'As a general rule an injury suffered by an employee in going to or returning from the employer's premises where the work of his employment is carried on does not arise out of his employment so as to entitle him to compensation under the Workmen's Compensation Act. * * *'

"In annotating a Michigan case, Guastelo v. Michigan Cent. R. Co., 194 Mich. 382, 160 N. W. 484, L. R. A. 1917D, 69, Negligence and Compensation Cases Annotated, vol. 15, at page 241, refers to what is 'a well settled general rule that injuries sustained by an employee while going to or returning from his day's work, where there is no contract of transportation, are not to be regarded as arising out of or received in the course of his employment.' * * *

"In the case before us, the admitted statement shows that the plaintiff necessarily had left his work many minutes before, as he had walked the greater part of a mile when he reached the place where he received the injury. He had left the public road over which he had walked and had entered the path leading directly to his home. All relation between him and his employer had ceased at that time, and there could be no causable connection between the source of his injury and the character of his employment. The danger he was exposed to and which caused his injury was far removed from the nature of his work, and was one which he or any one of his family, neighbors, or friends were in peril of, irrespective of what errand took them through this path."

In Boutte v. R. L. Roland & Son et al., 15 La. App. 530, 132 So. 398, 399, the court said:

"The burden of proof is on plaintiff in a suit under the Employers' Liability Act to prove that the injury was received while performing services arising out of or incidental to his employment in the course of his em-

ployment. Dimes v. Lassiter & Co., 7 La. App. 16, and Goree v. Atlantic Oil Producing Company, 2 La. App. 558. * * *

"The accident occurred approximately forty miles from the place where plaintiff was to go to work, and it cannot be said from the situation of the place of the accident that there was any causal connection between it and the risks or hazard incident to the place of employment, as was the case in Jones v. Louisiana Central Lumber Company, 2 La. App. 260, Gasca v. Texas Pipe Line Company, 2 La. App. 483, Prevost v. Gheens Realty Company, 151 La. 508, 92 So. 38, or LeBlanc v. Ohio Oil Company, 7 La. App. 721.

"The general rule is that an injury to an employee on the public highway in going to or returning from the place of employment does not arise in the course or out of the employment. However, there are exceptions to the general rule. See LeBlanc v. Ohio Oil Company, supra; Cudahy Packing Company v. Parramore, 263 U. S. 418, 44 S. Ct. 153, 68 L. Ed. 366, 30 A. L. R. 532; Jones v. Louisiana Central Lumber Company, supra; Prevost v. Gheens Realty Company, supra; and Arthur C. Nesbitt v. Twin City Forge & Foundry Company, 145 Minn. 286, 177 N. W. 131, 10 A. L. R. 165.

"While the place of accident was upon the public highway and the accident was directly attributable to a risk which was common to all persons using the highway, these facts do not necessarily preclude recovery provided it can be said that the employment resulted in exposing plaintiff to risk beyond that to which the public was subjected, or that it can be said the accident occurred on the employer's own premises. In this case, the employment did not result in exposing plaintiff to a risk beyond that to which the public was subjected, and it did not occur on the premises of the employer. The relation the place of the accident bears to the premises where the person is employed must be taken into consideration. Had defendant, through its duly authorized agent, contracted with plaintiff to transport him to and from his work and the accident had occurred while he was being thus transported, it could be said that the accident arose in the course of the employment. But, as the evidence does not show any such contract, we do not think that because the plaintiff had on different occasions on other jobs in which the defendants were not interested, ridden to work with the present foreman of plaintiff at the foreman's request, it could be held to be a tacit agreement to transport the plaintiff to and from his work by the defendants herein.

"This case is very similar to the cases of Bass v. Shreveport-Eldorado Pipe Line Company, 4 La. App. 107, and Nugent v. Lee Lumber Company, 4 La. App. 371, with the exception that in the two cited cases plaintiffs were riding from work to their home in vehicles owned by the defendant, and in the present case plaintiff was riding to work in a vehicle not owned by the defendant, but by defendant's foreman, without the knowledge or consent of defendant. The reasons assigned in the Bass and Nugent Cases are applicable here. The plaintiff has failed to make out his case,' and the judgment of the lower court rejecting his demands is correct."

And in Kern v. Southport Mill, 174 La. 432, 141 So. 19, 20, Justice St. Paul said:

"Plaintiff was employed by defendant as a pipe fitter at a wage of $33 per week. He was directed to do some outside work and then return to the mill. On returning he stepped out of a street car into the path of an automobile; was struck down, and permanently and totally injured; and now claims compensation. * * *

"Now an accident *occurs in the course of an employment* when it takes place during the time of such employment; just as a happening occurs in the course of any given day when it takes place during that day. Hence the provision that the accident, to entitle the employee to compensation, must occur in the course of his employment, means nothing more than that it must have taken place during the hours of employment and not at any other time.

"In this case the accident occurred very certainly 'during the course' of plaintiff's employment, since he was on his way back to the mill pursuant to express instructions.

"But that alone is not enough for recovery; the statute further requires that the accident must also 'arise out of' the employment. By which is meant, that the accident must be the result of some risk to which the employee is subjected in the course of his employment and to which he would not have been subjected had he not been so employed.

"But time, place, and *circumstance* must determine this. When the ill-fated Titanic foundered in the spring of 1912, all persons aboard her were situated exactly alike as to *time* and *place;* but they were not all situated alike as to *circumstance.* Those who traveled for pleasure were present of their own free choice alone; those who traveled for business, whether their own or that of another, were there *of necessity.* And, when one

finds himself at the scene of accident, not because he voluntarily appeared there but because the necessities of his business *called him there*, the injuries he may suffer by reason of such accident 'arise out of' *the necessity* which brought him there, and hence 'arise out of' his employment, if it so be that he was employed and his employment required him to be at the place of the accident at the time when the accident occurred.

"In determining, therefore, whether an accident 'arose out of' the employment, it is necessary to consider only this: (1) Was the employee then engaged about his employer's business and not merely pursuing his own business or pleasure; and (2) did the necessities of that employer's business reasonably require that the employee be at the place of the accident at the time the accident occurred? * * *

"In the final analysis that is the sum and substance of the principle on which all compensation cases rest, notwithstanding the many *words* in which that principle has been wrapped up. It has even been held that an employee is engaged about his employer's business whilst going to and coming from his employer's place of business, provided he pursued the usual and least hazardous means of reaching and leaving his employer's premises."

It can readily be seen from the foregoing decisions that the courts of our state have gone thoroughly and completely into the question involved here, and we need go no further to find a basis for our conclusion. We believe, however, the following jurisprudence on the subject instructive as well as interesting:

"Ordinarily when an employee is injured while traveling to or from his place of work, and is not paid for the time consumed in going and coming, the means of conveyance not being furnished by the employer and the employee having departed from or not yet reached the employer's premises, the injury does not arise out of the employment." Schneider's Workmen's Compensation Law, vol. 1, § 263, par. 4.

In the case of Cudahy Packing Company of Nebraska v. Parramore et al., 263 U. S. 418, 44 S. Ct. 153, 68 L. Ed. 366, 30 A. L. R. 532, Mr. Justice Sutherland, as the organ of the court, said:

"In going to and from the plant the workmen proceeded along a main highway running north and south and passing the plant at a distance of about half a mile to the east. From this point a public road runs west to and beyond the plant, crossed, before reaching the plant, by three lines of railroad, one of which, the Rio Grande Western, lies immediately adjacent to, and from which switches lead directly into, the plant. The only practicable way of ingress and egress for employees was along this road and across these railroad tracks, and that was the way customarily used. Joseph Parramore was, and for a considerable time had been, employed at the plant at a weekly salary as a stationary engineer. He lived at Salt Lake City. On the morning of August 9, 1921, he rode to the plant in the automobile of another employee, for the purpose of going to work. The automobile crossed over two of the railroad tracks and when upon that of the Rio Grande was struck by an engine and Parramore was instantly killed. This happened about seven minutes before the time when his service as an engineer was to begin. Upon these facts the Utah Industrial Commission awarded compensation to Parramore's dependents. * * *

"But the contention here, shortly stated, is that the accident was one which occurred off the premises of the employer on a public road, outside the hours of employment and while the employee was not engaged in any business of the employer; that it was not the result of any industrial risk but arose from a common peril to which the public generally was exposed; and that consequently liability is imposed arbitrarily and capriciously. * * * The modern development and growth of industry, with the consequent changes in the relations of employer and employee, have been so profound in character and degree as to take away, in large measure, the applicability of the doctrines upon which rest the common-law liability of the master for personal injuries to a servant, leaving of necessity a field of debatable ground where a good deal must be conceded in favor of forms of legislation, calculated to establish new bases of liability more in harmony with these changed conditions. Workmen's Compensation legislation rests upon the idea of status, not upon that of implied contract; that is, upon the conception that the injured workman is entitled to compensation for an injury sustained in the service of an industry to whose operations he contributes his work as the owner contributes his capital—the one for the sake of the wages and the other for the sake of the profits. The liability is based, not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment because of and in the course of which he has been injured. And this is not

to impose liability upon one person for an injury sustained by another with which the former has no connection; but it is to say that it is enough if there be a causal connection between the injury and the business in which he employs the latter—a connection substantially contributory though it need not be the sole or proximate cause. * * * Whether a given accident is so related or incident to the business must depend upon its own particular circumstances. No exact formula can be laid down which will automatically solve every case. The fact that the accident happens upon a public road or at a railroad crossing and that the danger is one to which the general public is likewise exposed is not conclusive against the existence of such causal relationship, if the danger be one to which the employee, by reason of and in connection with his employment, is subjected peculiarly or to an abnormal degree. * * *

"Here the location of the plant was at a place so situated as to make the customary and only practicable way of immediate ingress and egress one of hazard. Parramore could not, at the point of the accident, select his way. He had no other choice than to go over the railway tracks in order to get to his work; and he was in effect invited by his employer to do so. And this he was obliged to do regularly and continuously as a necessary concomitant of his employment, resulting in a degree of exposure to the common risk beyond that to which the general public was subjected. The railroad over which the way extended was not only immediately adjacent to the plant, but, by means of switches, was connected with it, and in principle it was as though upon the actual premises of the employer.

"We attach no importance to the fact that the accident happened a few minutes before the time Parramore was to begin work, and was, therefore, to that extent, outside the specified hours of employment. The employment contemplated his entry upon and departure from the premises as much as it contemplated his working there, and must include a reasonable interval of time for that purpose."

In the case of Bountiful Brick Company v. Giles, 276 U. S. 154, 48 S. Ct. 221, 222, 72 L. Ed. 507, 66 A. L. R. 1402, the same author said:

"In the Parramore Case the same Utah statute was under consideration, and we held that it was valid as applied to the case of an employee who, while on his way to work, was killed by a locomotive at a public crossing on a railroad adjacent to his employer's factory. There, as here, it was necessary for the employees, in order to get to the place of work, to cross the tracks, and they were in effect invited by the employer to do so. The difference between the two cases is that in the former the crossing customarily used was entirely upon a public road, while here the way followed was in part along the railway tracks and by crossings within the railroad right of way wherever the employees upon their own volition might choose to go.

"The present case, though it comes nearer the border line, falls within the principle of the Parramore Case. Since the only way of access to its brickyard from the east was across the railway tracks, the company necessarily contemplated the crossing of them by its employees. No definite line of travel being indicated by the company or followed by the employees, who, with the company's full knowledge and acquiescence, habitually crossed wherever they saw fit, it results that, however the crossing was made, the risk thereby incurred was reasonably incidental to the employment and became annexed as an implied term thereof. If it were necessary to strengthen the implication of consent on the part of the company to the crossing by any way its employees chose to take, it would be enough to refer to the testimony of the manager, who, knowing of the practice, did not forbid it, but in effect approved it by warning Giles simply to be careful."

And in Voehl v. Indemnity Insurance Company of North America, 288 U. S. 162, 53 S. Ct. 380, 382, 77 L. Ed. 676, 87 A. L. R. 245, Mr. Chief Justice Hughes said in his opinion: "The general rule is that injuries sustained by employees when going to or returning from their regular place of work are not deemed to arise out of and in the course of their employment. Ordinarily the hazards they encounter in such journeys are not incident to the employer's business. But this general rule is subject to exceptions which depend upon the nature and circumstances of the particular employment. 'No exact formula can be laid down which will automatically solve every case.' Cudahy Packing Company v. Parramore, 263 U. S. 418, 424, 44 S. Ct. 153, 68 L. Ed. 366, 30 A. L. R. 532. See, also, Bountiful Brick Co. v. Giles, 276 U. S. 154, 158, 48 S. Ct. 221, 72 L. Ed. 507, 66 A. L. R. 1402. While service on regular hours at a stated place generally begins at that place, there is always room for agreement by which the service may be taken to begin earlier or

elsewhere. Service in extra hours or on special errands has an element of distinction which the employer may recognize by agreeing that such service shall commence when the employee leaves his home on the duty assigned to him and shall continue until his return. An agreement to that effect may be either express or be shown by the course of business. In such case the hazards of the journey may properly be regarded as hazards of the service, and hence within the purview of the Compensation Act."

The Employers' Liability Act, Act No. 20 of 1914, as amended, is limited in the scope of its application. The very first sentence (section 1) reads: "This act shall apply *only* to the following." (Italics ours.)

Paragraph 1, following this sentence, deals with public employees. Then follows Paragraph 2, which reads: "Every person performing services arising out of and incidental to his employment in the course of his employer's trade, business or occupation in the following hazardous trades, businesses and occupations."

■ It will be seen from the above that to come under the terms of the act it is necessary that the person be performing services arising out of and incidental to his employment in the course thereof. All three of the conditions must obtain, and the employer must be engaged in one of the designated hazardous trades, businesses, or occupations.

■ It is admitted in this case that plaintiff had finished his day's labor and was on his way home. It is certain, therefore, that the injury did not occur "*in the course of*" his employer's business. In Kern v. Southport Mill, Ltd., supra, the court said: "Now an accident *occurs in the course of an employment* when it takes place during the time of such employment; just. as a happening occurs in the course of any given day when it takes place during that day. Hence the provision that the accident, to entitle the employee to compensation, must occur in the course of his employment, means nothing more than that it must have taken place during the hours of employment and not at any other time." (Italics ours.)

While the foregoing is the general rule, it is also true that in certain circumstances injuries occurring outside of the hours of employment have been held to occur in the course of the employment, and, in order to determine if such circumstances obtain in this case, we will examine the other elements involved.

We now consider whether the injury "*arose out of*" plaintiff's employment.

In Myers v. La. Ry. & Navigation Company, 140 La. 938, 74 So. 256, 258, it was said: "However, after vain attempts at formulating some verbal test for determining when the injury has or not arisen out of the employment, the courts have come to the conclusion that each case must be determined from its own facts; that the question cannot be solved by phrases."

And in Thibodeaux v. Yount Lee Oil Company, supra, the court said: "The general rule, however, without regard to any distinctions having to be made, or fine points drawn, is to the effect that injuries resulting from accidents occurring away from the employer's premises are not considered as having any causable connection with the employment and are not compensable. Besides, the dangers or risks from which such injuries arise are, as a rule, not incidental or peculiar to the nature of the employment, but are those that are common to the neighborhood, and, as.such, they do not come under the protection of the Compensation Law."

And in Kern v. Southport Mill, Ltd., supra, it was said: "In determining, therefore, whether an accident 'arose out of' the employment, it is necessary to consider only this: (1) Was the employee then engaged about his employer's business and not merely pursuing his own business or pleasure; and (2) did the necessities of that employer's business reasonably require that the employee be at the place of the accident at the time the accident occurred?"

Plaintiff was not engaged in any business of his employer at the time of his injury, nor did the necessities of his employer's business require him to be where he was, and we therefore conclude that his injury did not *arise out of* his employment.

Nor was the injury *incidental to* that employment. As stated by Judge Odom in Bass v. Shreveport-Eldorado Pipe Line Company, supra: "A reading of the cases cited, where the courts have held that an accident to an employee, while riding to or from his work, arises out of and during the course of his employment, will disclose that in such cases the transportation was furnished by the employer as an incident of the contract of employment or was part of the consideration therefor. But, so far as we have been able to find, no court has held that an employee was entitled to compensation when injured on his way to or from his work unless he was

being transported by the employer under circumstances as above outlined."

From the jurisprudence cited in this opinion, it will be seen that, in all the cases held to come under the Workmen's Compensation Law, there was some causal connection between the injury and the risks, or hazards of the employment, *or* that the injury occurred so near the employer's premises that to all intents and purposes it occurred upon them, *or* that the employee was subjected to some risk or hazard beyond that to which the public at large was subject. The case of Cudahy Packing Co. v. Parramore might be said to state the exception to the general rule, and, as said there, there is a large field of debatable ground. In the present case, the record is barren of testimony as to the exact location of defendant's plant. It is clear that it is situated in Jefferson parish some distance above the bridge where the injury occurred. While it is conceded that the bridge is the most convenient for plaintiff in returning home from his work, we are unable to conclude that plaintiff was subjected to any greater risk or hazard than any other person. Let us suppose, for example, that plaintiff resided in the town of Westwego across the Mississippi river. The most convenient and only practical ferry would be at Walnut street. The nearest ferry above is some eleven miles distant, at Kenner, and the nearest one below is at Napoleon avenue. Let us further suppose that plaintiff had finished his day's work, as is the case here, and that, while returning home on the Walnut street ferry, he was injured. It could not reasonably be said that such injury came under the Compensation Law. Whether this bridge was one mile, or the ferry ten miles, from the employer's premises, makes no difference. In neither case did the injury *arise out of, in the course of,* or *incidental* to the employment, and in neither case was there any risk *over and above or any greater than* that to which the public in general was subjected, or was there any *causal* connection with the employment. We find no error in our learned brother's overruling the plea of estoppel.

■ We now take up the case on its merits. The bridge over the Seventeenth Street Canal is elevated and approached on either side by a ramp. The accident occurred on the ramp approaching the bridge from the Jefferson parish side. This ramp is a built up earthen embankment with a surfaced roadway leading to the bridge and, at the time of the injury, there was a wooden binder on the edge of this roadway. Bordering the roadway was a shelled pathway several feet wide generally used by pedestrians and on the edge of the embankment a wire fence paralleled this path. Plaintiff was on his way home from work, and was walking up the shelled pathway on the left-hand or lake side, and going in the direction of New Orleans.

Defendant's truck with two trailers attached, driven by its employee, was going in the opposite direction, that is, towards Jefferson parish, and on the lake side of the surfaced roadway. The truck and trailers were generally used for hauling cotton, but the accident occurred in the evening when the truck was on its way back to defendant's premises after having delivered a load of cotton, and, consequently the truck and trailers were unloaded.

Plaintiff's version of the accident is that the driver of the truck had seen some friends, who were standing on the bridge, and that he swerved the truck in play as though to run into them, and, after passing, that he looked back, calling them and waving with one hand, and that he ran off the road, causing the end trailer to swerve and knock plaintiff into one of the posts supporting the wire fence at the edge of the shelled pathway.

Green, the driver of defendant's truck, contends that a bus was attempting to pass him, and, when abreast of him, an automobile came in the opposite direction, so that the three vehicles were practically abreast, and that the end trailer hit a hole on the edge of the road and thus struck plaintiff.

It appears that a portion of the wooden curbing or binder along the edge of the surfaced roadway had rotted, and the constant passing of vehicles had deepened and widened this hole, and that, although the truck and the first trailer passed the hole, the wheels of the second trailer dropped into it, causing this trailer to bounce and strike plaintiff, knocking him down.

Green further testified that he called to plaintiff to watch himself because, as he stated, "he was not where he was due," meaning, we presume, that plaintiff was on the edge of the surfaced roadway instead of on the gravelled path.

The testimony is rather conflicting, and it is very difficult to ascertain just exactly in what manner the accident occurred. Several features, however, are undisputed. There is no dispute that plaintiff and the truck were traveling in opposite directions on the ramp. Plaintiff was walking up the shelled pathway, and the truck was traveling down the

surfaced roadway, and it is inconceivable that plaintiff could have been walking in the pathway of a large truck with an unobstructed view and not see it. On the other hand, Green's own testimony is to the effect that a bus was attempting to pass him on the left and at the same time an automobile was approaching in the opposite direction. This would unquestionably have caused Green to swerve to the right in order to provide room enough for the three vehicles, and in so doing a side motion was given to the end trailer, causing its right wheels to fall into the hole, thus jolting it over on to the shelled pathway and causing it to strike the plaintiff. Plaintiff was where he had a right to be, and his lateral movements were more or less restricted by the presence of the wire fence on the edge of the embankment. The trailers attached to defendant's truck were unloaded and, consequently, much more given to side sway than if heavily loaded with bales of cotton.

The learned trial judge who saw and heard the witnesses must have taken into consideration all of these factors, and, if there be any error in his judgment, it is not so manifest as to warrant a reversal of his finding of fact by this court. We conclude, therefore, that the injury was caused solely by the negligence of defendant's employee in improperly handling his vehicle under the circumstances, by permitting the second trailer to swerve off of the roadway and on to the gravelled path, thus causing the injury complained of.

The medical testimony shows that plaintiff suffered a severe contusion in the region of his right knee and a fracture of the right fibula, in its upper third, near its head. He was compelled to wear a plaster cast, and was disabled for several months.

In the case of Breaux v. Russell, 151 So. 267, we approved an award of $2,500 for injuries somewhat similar, except that in the Breaux Case the disability extended for a much greater period than it did in the present case.

The learned trial judge allowed here the sum of $1,500, and, in proportion to the period of disability in this case and that in the Breaux Case, we are of the opinion that the amount awarded is substantially correct.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.

JANVIER, Judge (concurs).

I agree with everything that appears in the majority opinion, and I write a concurring opinion merely to call attention to the fact that in this case the injured party accepted from the employer only a few weekly compensation payments, and I feel that the reasons given by me in my dissenting opinion in Gerstmayr v. Kolb (La. App.) 158 So. 647, rendered January 21, 1935, therefore, do not apply here, and that in this matter we are bound by the decision of the Supreme Court rendered in Gray v. New Orleans Dry Dock & Shipbuilding Company, 146 La. 826, 84 So. 109.

I therefore concur.