O’NIELL, J.
Plaintiff has appealed from a judgment rejecting her demand for compensation under the Employers’ Liability Act. The claim is for the death of her husband. It is admitted that, if she is entitled to compensation, the amount is $6.92 a week, for 300 weeks, and $100 for funeral expenses.
There are only two questions in the case. One is a question of fact — whether the death resulted from- an accident. The other is a question of law' — whether the man was, according to the facts which are admitted, in the employ of the defendant company at the time of the alleged accident, within the meaning of the statute, Act 20 of 1914, p. 44, as amended by Act 243 of 1916, p. 512, and by Act 38 of 1918, p. 49.
[1] Our opinion is that defendant’s answer to this suit contains an acknowledgment that plaintiff’s husband did suffer an accident. The only issue tendered by the pleadings, in that respect, is whether the man’s death was caused by the accident.
Having alleged that her deceased husband, Peter Prevost, was employed in defendant’s sugar factory on the occasion of the alleged accident, plaintiff averred, in the fifth paragraph of her petition:
“After he left the sugar house, between the hours of 11 and 12 o’clock at night, and while walking from the said sugar house to his lodging house, as aforesaid, and while traversing the usual and customary route to the said lodging house, the night being very dark, and there being no lights along the passage, the said Peter Prevost accidentally ran into, stumbled over or across a wooden and iron trestle, or runway, constructed to connect the cooper shop of the said Gheens Realty Company with its sugar house.”
Answering that paragraph of the petition, defendant made the following admissions and averments:
“Respondent is informed and believes and admits that, on the night of January 31st, between the hours of 11:30 and 12 o’clock, said Peter Prevost left the sugar house of plaintiff, where he was employed as a sugar drier, and passed into the yard and was on his way to his lodging house; .respondent denies that there was any wooden or iron trestle, but avers that said Peter Prevost was walking on the narrow-gauge railroad track, leading from the sugar house, when-he stumbled and fell.”
In the sixth paragraph of her petition, plaintiff averred:
“That the said Peter Prevost, in thus running into and stumbling over or across the said trestle or runway, sustained fatal internal injuries, from which he died on the night of the next day, to wit, February 1, 1919.”
Answering the averments of that paragraph, defendant made the following denials and admission:
“Respondent denies that the said Peter Prevost received any fatal internal injuries from said fall, for lack of sufficient information to justify a belief thereof, and denies that plain-’ tiff has any information or facts to justify such a belief, but admits that the said Peter Prevost died on February 1st.”
*511 Defendant’s admission “that said Peter Prevost was walking on the narrow-gauge railroad track * * * when he stumbled and fell,” and the denial “that said Peter Prevost received any fatal internal injuries from said fall,” are very important, because the only man who was with Prevost “when he stumbled and fell” died, about six months after the accident, without having testified in the case. His statement, made soon after the accident, and the statements of others to whom Prevost spoke on the morning after the accident, were the only means of proving what caused Prevost to stumble and fall. The statements made by Prevost and his companion were not admitted in evidence, under the rule excluding hearsay or self-serving declarations. But we do not see any importance in the question whether it was a wooden or an iron trestle or runway, or some other obstacle, that caused the man to stumble and fall. Plaintiff’s allegation that her husband stumbled and fell over the so-called trestle or runway was, very likely, founded upon the statements made by him and his companion soon after the accident, and upon the fact that the so-called trestle or runway, which was used for sending empty barrels from the cooper shop to the sugar factory, crossed the railroad track or tramway, at a point about midway between the sugar house and the lodging house. It appears that a section of the runway, where it crossed the railroad track, was portable, or removable, to allow cars to pass, and was supposed to be left open at night. It may be assumed, too, that defendant’s admission, that Prevost stumbled and fell on the narrow-gauge railroad track, was based upon the statements made by him and his companion.
[2] The distance from the sugar house, via the narrow-gauge railroad, to the bunkhouse, where Prevost and the other laborers slept, was only about 150 feet. When Prevost, with his companion, arrived at the bunkhouse, he was suffering intense pain in the abdominal region, and was hardly able to speak. His companions applied some simple external remedies to his abdomen during the night and early morning, and he was sent to a physician that day. The bruise on the abdomen was not very apparent, but was sufficient to convince the witnesses who saw it that the man was suffering from a traumatic injury. The physician testified that the death was caused by internal hemorrhage; that his examination of the man, before death, showed that his abdomen was very painful and sensitive; and that there was no heart lesion, cerebral hemorrhage or embolism, or hernia. The manager for the defendant company testified that, about 8 o’clock in the morning after .tbe alleged accident, he “found out” that Peter Prevost had been hurt by a fall, and then went and saw Prevost and found him suffering very much; that he (the manager) offered to send for a physician, but that Prevost and his companions preferred that he be taken to his physician in his home town. He died there that night, less than 24 hours after the accident. The evidence leaves no doubt in our mind that his death was caused by the accident.' It is not contended, on behalf of defendant, that the injury resulted from any one of the four causes for which alone, under section 28 of the statute, the defendant would be exempt from liability, viz.: (1) By the employee’s willful intention to injure himself or another, (2) by intoxication, (3) by a failure on the part of the employee to use an adequate guard or protection provided for him, or (4) by his deliberate breach of a statutory regulation affecting safety of life or limb.
[3,4] Our opinion is that Peter Prevost was yet in the employ of the defendant company at the time of the accident. He and his three companions were employed by the month, operating the centrifugals, drying-sugar, and packing it in barrels. They *513 worked two together, in shifts or “watches,” alternately; each couple being six hours on and six hours off duty. They slept in a bunkhouse on the premises, their privilege of sleeping there being a part of the compensation for their work. In the afternoon before the accident, it was apparent that the sugar making for the season would be finished during the night. Prevost and his companion, who worked during the afternoon, were permitted, at their request, to continue working until midnight, instead of going on duty at that hour. They and the two other men, therefore, worked together that night and finished drying and packing the sugar near midnight. They immediately left the sugar house to go to the bunkhouse, Prevost and his companion going by one route and the two other men by another route. On Prevost’s way to the bunkhouse, the accident occurred. The men were paid off the next morning about 8 or 9 o’clock. The manager for the defendant company testified that the month for which they were paid had ended at 6 o’clock that morning; that is, about six hours after the accident had occurred. Prevost was therefore not only rightfully on the premises, but actually in the employ of the defendant company, when the accident occurred. When an employee is going from his work to his lodging house, on the premises where he works, he is, within the meaning of paragraph 2 of section 1 of the Employers’ Liability Act, “performing services arising out of and incidental to his employment in the course of his employer’s trade, business or occupation.” See authorities cited in Myers v. Louisiana Railway & Navigation Co., 140 La. 938, 74 South. 256.
The judgment appealed from is annulled, and it is ordered, adjudged, and decreed that plaintiff, Rachel Verret Prevost, recover of and from defendant, Gheens Realty Company, compensation at the rate of $6.92 a week, payable in weekly installments, cornmeneing on the 8th of February, 1919, the past-due installments, with interest at 5 per cent, per annum on each installment from its maturity, to be collectible when this decree shall have become final; and that plaintiff recover of and from defendant also the sum of $100, with interest, thereon at 5 per cent, per annum from the 8th of February, 1919, and all costs of this suit.
Rehearing refused by Division A, composed of Chief Justice PROYOSTX and Justices OVERTON and LECHE.