# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## WCA 06-1202


**CRICKETT MILLER**

**VERSUS**

**BLACKTYPE FARMS**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 2
PARISH OF RAPIDES, NO. 04-08804
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*


**JOHN D. SAUNDERS**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*


Court composed of John D. Saunders, Jimmie C. Peters, and Michael G. Sullivan, Judges.

**REVERSED AND RENDERED.**


**John Goulding Swift**
**Swift & Rhoades**
**P. O. Box 53107**
**Lafayette, LA 70505-3107**
**(337) 572-9877**
**Counsel for Defendant/Appellant:**
**Blacktype Farms**

**Ann Dore Latour**
**Attorney at Law**
**405 W. Main St.**
**Lafayette, LA 70501**
**(337) 235-3878**
**Counsel for Defendant/Appellant:**
**Blacktype Farms**

**Crickett Miller**
**In Proper Person**
**P. O. Box 35**
**St. Maurice, LA 71471**
**(318) 646-3683**

**SAUNDERS, Judge.**

An employee brought an action against her employer in a workers' compensation court. The employee requested reimbursement of past medical bills paid by her, reasonable expenses for future medical bills, and penalties for arbitrary and/or capricious denial of her claim.

The workers' compensation judge (WCJ) was presented with conflicting testimony regarding the time and place of her injury. Furthermore, the WCJ was presented with conflicting testimony as to who was benefitting from the employee's actions when she was injured.

The WCJ found that the employee was a 24 hour a day employee and, therefore, regardless of which version of events testified to by the litigants was true, she was within the course and scope of her employment when she was injured. Because of this finding, the WCJ awarded the employee the relief requested.

We reverse the WCJ's ruling that the employee was a 24 hour employee as that ruling was based on an error of law. We conduct a *de novo* review of the record, render judgment that the employee failed to carry her burden of proof that she was within the course and scope of her employment when her accident took place, and dismiss the employee's claim with prejudice.

**FACTS AND PROCEDURAL HISTORY:**

Cricket Miller ("Ms. Miller") was employed by Blacktype Farms to feed and care for expensive racing horses. The owners of Blacktype Farms, Dr. Thomas Latour ("Dr. Latour") and his wife, Roxie Latour ("Mrs. Latour"), arranged and paid for Ms. Miller to reside in a camp, owned by Mr. Rayburn Smith, located over a half-mile away from Blacktype Farms. Ms. Miller claimed that on or about December 3, 2003, while working at Blacktype Farms, she had an accident and sustained injuries to her

teeth, mouth and jaw. Ms. Miller testified that the accident took place at about six o'clock in the evening while she was in the Blacktype Farms' arena attempting to unload hay from the back of a work truck. She testified that she was unloading the hay in order to feed horses owned by Blacktype Farms. Ms. Miller produced no other witnesses, nor did she produce any corroborating evidence as to the place or the purpose of her actions when the accident occurred.

The testimony of the owners of Blacktype Farms presented a very different version of events surrounding Ms. Miller's injury. First, Dr. Latour controverted Ms. Miller's testimony that she was feeding the horses at six o'clock P.M. He testified that normal afternoon feedings happened between three and four in the evening. Dr. Latour claims he would never have allowed such a large deviation from the strict feeding schedule of his horses.

Further, Dr. Latour testified that Ms. Miller had spoken to him the next afternoon regarding her December 3, 2003, accident. In his testimony, Dr. Latour claimed that Ms. Miller stated that she had injured herself the day before when she fell and hit her mouth on the tailgate of the work truck after her duties were completed. Further, according to Dr. Latour, Ms. Miller said that she was using a swing knife in an attempt to clear brush from a gate located at her residence at the Smith Camp when she fell and was injured. Dr. Latour also said that Ms. Miller told him that when the accident took place, she was clearing this brush in order to prepare the land around her residence for storing her own horses.

The testimony of Mrs. Latour also contradicted some of Ms. Miller's testimony regarding the circumstances surrounding her accident. Mrs. Latour testified that the series of events put forth by Ms. Miller is illogical. Mrs. Latour testified that if Ms.

2

Miller's series of events is to be believed, she would have to remove hay from the barn, carry that hay from the barn to the arena on a four-wheeler, load the hay from the four-wheeler into the work truck in the arena, then proceed to unload the hay from the truck back onto the four-wheeler to go and feed the horses. Mrs. Latour also testified that although use of the work truck was strictly for farm purposes, during times of wet weather, as was the case near the time of the accident, Ms. Miller was allowed to use the work truck to traverse the driveway to get to her residence at the Smith Camp due to the truck's four-wheel drive capability.

Regardless of the conflicting testimony, the WCJ gave great weight to two facts: (1) Dr. Latour paid the rent and utilities and had arranged for Ms. Miller to reside in the Smith Camp and (2) the work truck was normally used only for farm purposes. The WCJ reasoned that because of these two facts, regardless of where, when and why Ms. Miller was injured, case law mandated that Ms. Miller was a 24 hour a day employee, and, as such, regardless of which version of events actually took place, she was within the course and scope of her employment at the time of the accident. The WCJ awarded Ms. Miller the relief she sought.

Blacktype Farms appealed the WCJ's judgment. We reverse the WCJ's finding that Ms. Miller is a 24 hour a day employee. We conduct a *de novo* review of the record, and render the opinion that Ms. Miller did not carry her burden of proof necessary to recover under the workers' compensation statutes. Ms. Miller's workers' compensation claim against Blacktype Farms is dismissed with prejudice.

**ASSIGNMENTS OF ERROR:**

1.    Did the WCJ err in finding Cricket Miller within the course and scope of her employment when she was injured?

3

2. Did the WCJ err in not determining if there was an accident under the Workers' Compensation Act?

3. Did the WCJ err in awarding Cricket Miller to be paid the following by Blacktype Farms: (1) one thousand, seven hundred twelve dollars and forty-six cents ($1,712.49) reimbursement for medical expenses together with legal interest from the date of demand until paid, (2) reasonable and necessary medical treatment from health care providers of her choosing

4. Did the WCJ err in awarding Cricket Miller two thousand dollars ($2,000.00)for arbitrary and capricious, and/or unreasonable denial of her claim for medical benefits based upon its finding that Ms. Miller was in the course and scope of her employment?

**ASSIGNMENT OF ERROR #1:**

Blacktype Farms argues that the WCJ erred in finding Ms. Miller within the course and scope of her employment when she was injured. We agree.

In general, an appellate court is to review factual findings issued in workers' compensation matters according to the manifest error-clearly wrong standard, set forth by the Louisiana Supreme Court in *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840 (La. 7/1/97), 696 So.2d 551. However, when there are errors of law asserted on appeal, the appellate court must make a determination whether the workers' compensation judge's ruling was legally correct. *McClain v. Pinecrest Development Center*, 00-1622 (La.App. 3 Cir. 2/28/01), 779 So.2d 1112.

The WCJ was presented with two versions of events and ruled that even if the version of events as put forth by the testimony of Dr. Latour is believed, case law mandated that Ms. Miller should be found within the course and scope of her employment when she was injured. The WCJ based its ruling on cases sometimes referred to as "bunkhouse" cases.

These are cases where courts have found employees within the course and scope of employment on a 24 hour basis when housing is provided as part of the

4

employment compensation received and when the main benefit of having its employee housed on or next to land where they work is to the employer. Furthermore, the employees in the "bunkhouse" cases are generally acting in furtherance of the benefit to the employer and not acting on a purely personal basis when they are injured.

We find that the WCJ's application of those cases to the case at bar is an error of law. The situation in the case at bar is different than those in the "bunkhouse" line of cases. Here, Ms. Miller's residence was not located on land owned by or adjacent to Blacktype Farms. Moreover, the residence was not mainly provided to Ms. Miller for the benefit of the employer, nor was Ms. Miller engaged in an activity in furtherance of any benefit to Blacktype Farms when her injury took place.

The first case the WCJ cited was that of *Prevost v. Gheens Realty Co.*, 151 La. 508, 92 So. 38 (La.1922). In *Prevost* the Supreme Court found that a worker who sustained an injury while going from work to the bunkhouse was within the course and scope of his employment. The bunkhouse in *Prevost* was owned by the employer, provided to the employee mainly for the employer's benefit, and located on the premises where the employee worked.

If the version put forth by Dr. Latour is believed, unlike the claimant in *Prevost*, Ms. Miller was not traveling between her work and her residence when she was injured, nor was the residence provided to Ms. Miller mainly for Blacktype's benefit, nor was the residence located on or adjacent to Blacktype Farms. Rather, Dr. Latour testified that when the accident occurred, Ms. Miller had already finished her work, was living in a residence provided to her mainly out of his benevolence, and

5

was clearing brush from a gate at her residence located on property not belonging to Blacktype Farms.

Further, the employer in *Prevost* directly benefitted from what its employee was doing when the injury took place. Traveling to the bunkhouse was a requisite to allow the employer to enjoy the benefit of having Mr. Prevost lodge on its grounds. According to Dr. Latour, Ms. Miller, who was injured while clearing brush from an interior gate, claimed to be doing this activity for the purpose of having her own horses kept on the Smith property, a purely personal endeavor. Accordingly, the application of the *Prevost* case to the case at bar is in error.

The WCJ also relied on *Youngblood v. Rotor Aids, Inc.*, 491 So.2d 132 (La.App. 3 Cir.) *writ denied* 494 So.2d 1177(La.1986). In *Youngblood*, the claimant worked in shifts where he was on duty 24 hours a day for seven-day shifts. The injury in *Youngblood* happened when the claimant was engaged in an authorized rest period during one of those shifts. Here, there is no evidence that Ms. Miller ever performed shift work where she was on duty 24 hours a day for any period of time. Rather, according to the testimony of Dr. Latour, Ms. Miller had freedom in her job to come and go as she pleased as long as the horses got fed at appropriate times.

Furthermore, the claimant in *Youngblood* was required by his employer to reside in an employer provided trailer in order to be on call for 24 hours a day, a necessity of being able to perform his job. Therefore, the *Youngblood* claimant lived at the trailer during the seven days of his shift mainly for the benefit of the employer. Here, Ms. Miller was not required to live at the nearby Smith Camp in order to be employed. Furthermore, there is no evidence in the record that Ms. Miller was living at the Smith Camp mainly for the benefit of Blacktype Farms. Quite the contrary, Dr.

6

Latour testified that he made arrangements for Ms. Miller to live close to the farm out of generosity and mainly for Ms. Miller's convenience to have less travel time to get to her job, to help her get out of her parents' house and to help her raise her child. Even though Mrs. Latour testified that it was of some benefit to Blacktype Farms to have Ms. Miller reside close to the farm, any such benefit was secondary. Accordingly, the WCJ's application of *Youngblood* to the case at bar is in error.

Finally, the WCJ relies on the case of *Vaughan v. Insurance Co. of North America*, 482 So.2d 1014 (La.App. 3 Cir. 1986). However, in *Vaughan* the issue as whether the rental value of the mobile home provided to the employee by his employer should be included in the claimant's weekly wages. As before, the WCJ's reliance on this case is in error.

The WCJ misinterpreted cited case law, erroneously applied them to the case at bar, and committed an error of law in concluding that Ms. Miller was analogous to the employees in the "bunkhouse" line of cases. Based on this erroneous application, the WCJ decided that regardless of which version of events it held correct, Ms. Miller was within the course and scope of her employment when her accident happened. Accordingly, we vacate the WCJ's finding that Ms. Miller was within the course and scope of her employment when she was injured.

Without a determination of whether Ms. Miller was within the course and scope of her employment, we have no basis to rule on Assignments of Error numbers 2, 3 and 4. In the interest of judicial efficiency, and because we have a complete record before us, we will conduct a review as to whether Ms. Miller was within the course and scope of her employment when she was injured.

7

It is well settled that reviewing courts will defer to a reasonable decision of the WCJ on a matter or question properly within its discretion. However, if the WCJ's decision is based on an erroneous interpretation or application of law rather than a valid use of discretion, the incorrect decision is not entitled to deference. *Kem Search, Inc. v. Sheffield*, 434 So. 2d 1067, 1071-1072.

Because the WCJ erroneously relied on "bunkhouse" case law, and because the WCJ made no finding as to which version of events put forth by the conflicting testimony it found correct, we will conduct a *de novo* review of the record to determine if Ms. Miller carried her burden of proof that she was within the course and scope of her employment when the accident that caused her injury took place. We render the finding that she did not.

In a workers' compensation proceeding, as in most civil actions, the plaintiff must prove by a preponderance of the evidence the causation of his or her workers' compensation claim. Therefore, the evidence, when taken as a whole, must show that it is more probable than not that the employment accident caused the injury. *Gradney v. Vancouver Plywood Co., Inc.*, 299 So.2d 347 (La. 1974), *see also* La.R.S. 23:1031.

While it is clear from the record that Ms. Miller did suffer an injury, it is also clear that she did not establish that this injury occurred while she was within the course and scope of her employment. The only evidence put forth by Ms. Miller that she was injured while in the course and scope of her employment was her own self-serving testimony. While it is true that a worker's testimony alone may satisfy the burden of proof to establish a work related injury, for this testimony alone to suffice no other evidence can discredit the worker's version of events and the worker's testimony must be corroborated by the circumstances following the accident. *Bruno*

8

*v. Harbert International, Inc.*, 593 So.2d 357 (La.1992). These two elements are not present in the case at bar.

Ms. Miller's testimony is controverted by that of Dr. Latour and Mrs. Latour. Dr. Latour's testimony is in direct conflict with Ms. Miller's testimony on many points.

First, Dr. Latour refuted Ms. Miller's testimony as to what time she was feeding the horses when she was injured. He testified that normal afternoon feeding was from three to four P.M. and that Ms. Miller's testimony that she was preparing to feed his horses at six P.M. would never be allowed to have happened.

Second, Dr. Latour testified that Ms. Miller had told him a completely different story as to the place where her accident happened. At trial, Ms. Miller said the accident happened in the arena at Blacktype Farms. Dr. Latour controverted Ms. Miller's statements by testifying that Ms. Miller told him she was injured on property not owned by Blacktype Farms, but rather at her residence, owned by Mr. Rayburn Smith, located over a half-mile away.

Finally, Ms. Miller testified that she was intending to feed the horses when the accident happened. Dr. Latour again controverted this testimony by stating that Ms. Miller had told him her actions prior to injury were for the purely personal reason of clearing brush from a gate in order to prepare land owned by Mr. Smith for her own horses.

The testimony of Mrs. Latour also contradicted some of the facts that Ms. Miller testified to with regards to the circumstances surrounding her accident. Mrs. Latour testified that the series of events put forth by Ms. Miller, that she was in the arena unloading hay from the work truck in order to go feed the horses, is illogical.

9

Mrs. Latour testified that if Ms. Miller's series of events is to be believed, she would have to remove hay from a barn, carry that hay from the barn to the arena on a four-wheeler, load the hay from the four-wheeler into the work truck in the arena, unload the hay from the truck back onto the four-wheeler, then go and feed the horses.

Because the record contains testimony that contradicts that of Ms. Miller, she must produce further evidence of her injury occurring within the course and scope of her employment. She has failed to do so.

Besides her self-serving testimony, the only other evidence that Ms. Miller produced was unauthenticated medical records that indicated that she was indeed injured at the time she alleges, but there is no mention in any of the medical records of the circumstances surrounding her injury.

When looking at the evidence in the record as a whole, we find, at best, that Ms. Miller proved that it is just as likely as not that she was injured within the course and scope of her employment. Unfortunately for Ms. Miller, her burden of proof is a preponderance of the evidence, a greater burden of proof than she is able to prove. Therefore, we must find that Ms. Miller did not carry her burden.

Accordingly, we find that Ms. Miller has failed to carry her burden of proof in establishing that she was more probably than not injured in a work-related accident. As such, we dismiss Ms. Miller's workers' compensation claim against Blacktype Farms with prejudice.

**CONCLUSION:**

We reverse the judgment rendered I favor of Cricket Miller and against Blacktype Farms, and render judgment in favor of Blacktype Farms, dismissing Cricket Miller's claims with prejudice. All costs are assessed to Cricket Miller.

**REVERSED AND RENDERED.**

---

11