# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 15-277

**KENNETH CLARK**

**VERSUS**

**SEDGWICK CMS, WALGREENS DRUG STORES**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 3
PARISH OF CALCASIEU, NO. 14-01589
ANTHONY PALERMO, WORKERS' COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***

## PHYLLIS M. KEATY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, Phyllis M. Keaty, and David Kent Savoie, Judges.

**Savoie, J., concurs and assigns written reasons.**

**REVERSED IN PART AND REMANDED.**

Kevin L. Camel
Cox Cox Filo Camel & Wilson, LLC
723 Broad Street
Lake Charles, Louisiana 70601
(337) 436-6611
Counsel for Plaintiff/Appellee:
     Kenneth Clark

Matthew D. Fontenot
Hurlburt, Monrose & Ernest
Post Office Drawer 4407
Lafayette, Louisiana 70502
(337) 237-0261
Counsel for Defendant/Appellant:
     Walgreen Company

**KEATY, Judge.**

The employer, Walgreen Company (Walgreens), appeals a judgment rendered by the workers' compensation judge (WCJ) in favor of its former employee, Kenneth Clark, awarding him Supplemental Earnings Benefits (SEBs) equal to the amount it had previously paid him in Temporary Total Disability Benefits (TTDs) and reinstating his right to further vocational rehabilitation. Clark answers the appeal seeking a reversal of the WCJ's denial of his claim for penalties and attorney fees and seeking additional attorney fees for the work necessitated by this appeal. For the following reasons, we reverse in part and remand.

## FACTS AND PROCEDURAL HISTORY

Clark was employed as an assistant manager at the Walgreens Drugstore in Moss Bluff in March 2012 when he injured his back while lifting a case of radios that had been delivered to the store. He reported the accident to his manager who sent him for treatment at an urgent care facility. Thereafter, Clark sought treatment from his family physician who referred him to neurosurgeon Dr. Erich Wolf. A March 22, 2012 MRI revealed that Clark had three herniated lumbar discs. Dr. Wolf performed a discectomy of Clark's extruded L2-3 disc in October 2012, which relieved some of Clark's pain; however, Clark reported that he still suffered from low back pain and radiculopathy. Clark later underwent two epidural steroid injections which provided him with temporary relief. On April 25, 2013, Dr. Wolf released Clark to work eight hours per day at light to minimal-medium duty. According to a January 8, 2014 office note, Dr. Wolf believed that Clark had reached maximum medical improvement and he did not recommend any further surgery. At that time, Dr. Wolf believed that Clark's pain was "mostly arthritic [and] related to facet joints at the L4-5 level."

After his accident, Walgreens voluntarily paid Clark TTDs based on his pre-injury average weekly wage of $727.37.[1] On January 29, 2014, Walgreens modified Clark's indemnity benefits from TTDs to SEBs at the rate of $244.89 per week based on a wage earning capacity of $360.00. On March 11, 2014, Clark filed a Form 1008 Disputed Claim for Compensation against Walgreens and its workers' compensation insurer, Sedgwick CMS, challenging the reduction of his benefits and seeking penalties and attorney fees.

In October 2013, Walgreens sent Clark to vocational rehabilitation counselor Jamie Primeaux. Over the course of the next seven months, Ms. Primeaux located seven potential jobs for Clark which she submitted to Dr. Wolf for approval. According to Ms. Primeaux's deposition testimony,[2] four of those jobs were available after she received approval by Dr. Wolf. Ms. Primeaux described Clark as a "model client" who made "a full effort in the job search," and often made more than the ten employment contacts that he was asked to make each week as part of his vocational plan. She noted that, in addition to following through on the seven job leads that she provided to him, Clark contacted over 100 additional prospective employers, but he did not receive any job offers. When asked her opinion about the current job market, Ms. Primeaux expressed her belief that Clark was employable, but that there was stiff competition from individuals without work who did not have injuries and/or need modifications. On April 23, 2014, Ms. Primeaux notified Clark that Walgreens would no longer be providing him with her services.

---

[1] The parties stipulated to this amount at trial.

[2] Because of Ms. Primeaux's unavailability for trial, the parties took her deposition on August 8, 2014, and her deposition and records were submitted as joint trial exhibits.

Trial was held on September 30, 2014, and Clark was the only witness to testify live. He acknowledged that Ms. Primeaux had notified him about the seven available jobs that she found for him and that he had applied for all seven of them. In fact, Clark stated that he had identified and applied for several of those jobs before being told about them from Ms. Primeaux. Clark explained that he had applied for 105 jobs but had not received a single offer of employment. A job log that Clark prepared detailing his independent job search efforts was submitted as a joint trial exhibit. Clark testified that he always informed his potential employers that he was collecting workers' compensation and that he had limitations as a result of his back injury. Upon questioning by the WCJ, Clark stated that he was a high school graduate.

The parties jointly submitted five trial exhibits, which included records from Dr. Wolf, the deposition of and records from Ms. Primeaux, and a job search log prepared by Clark. In addition, Clark submitted office notes regarding his treatment from Dr. Wolf, and Clark's attorney presented the WCJ with an affidavit detailing the time he expended in representing Clark in this matter. At the conclusion of the trial, the WCJ took the matter under advisement and directed the parties to file post-trial briefs. On November 21, 2014, the WCJ issued oral reasons for judgment finding that although a vocational rehabilitation counselor had identified "jobs within Clark's physical capabilities," "there was no showing that the jobs were available to Clark at the time his benefits were reduced from Temporary Total Disability Benefits to Supplemental Earnings Benefits on January 29, 2014." As a result, the WCJ declared that based upon Clark's zero wage-earning capacity, he was entitled to SEBs at his TTDs rate of $484.89, with Walgreens entitled to a credit for the amount of SEBs it paid Clark after it reduced

his benefits. The WCJ further declared that Clark was entitled to further vocational rehabilitation. Clark's claim for penalties and attorney fees was denied based upon the WCJ's determination that, although Walgreens "did not succeed in finding a position for Mr. Clark or identifying a position that was opened to him at the time they reduced benefits, they did have a reasonable basis to reduce the benefits." Likewise, while the WCJ found that Clark could benefit from further vocational rehabilitation, it declined to award Clark penalties or attorney fees for Walgreens' termination of those services. The WCJ signed a written judgment in conformity with its oral reason reasons on December 30, 2014.

Walgreens now appeals, asserting that the WCJ failed to apply the correct legal standard in determining the availability of a job identified for Clark and that the WCJ committed legal error in not finding the reduction of Clark's SEBs to be proper. Clark answers the appeal seeking a reversal of the WCJ's denial of his claim for penalties and attorney fees and seeking additional attorney fees for the work necessitated by this appeal.

## STANDARD OF REVIEW

"In general, an appellate court is to review factual findings issued in workers' compensation matters according to the manifest error-clearly wrong standard." *Miller v. Blacktype Farms*, 06-1202, p. 4 (La.App. 3 Cir. 3/7/07), 952 So.2d 867, 870. "However, when there are errors of law asserted on appeal, the appellate court must make a determination whether the workers' compensation judge's ruling was legally correct." *Id.* "It is well settled that reviewing courts will defer to a reasonable decision of the WCJ on a matter or question properly within its discretion. However, if the WCJ's decision is based on an erroneous interpretation or application of law rather than a valid use of discretion, the

4

incorrect decision is not entitled to deference." *Id.* at 872. Moreover, "[i]f the review on appeal reveals a reversible error of law, a *de novo* review of the record must be conducted." *Perry v. Perry & Sons Vault & Grave Serv.*, 03-1519, p. 3 (La.App. 3 Cir. 5/12/04), 872 So.2d 611, 614.

## DISCUSSION

> Pursuant to Louisiana Revised Statute[s] 23:1221(1), TTD benefits are proper when the claimant is unable to engage in any self-employment or occupation for wages. Once an injured worker reaches maximum medical improvement and is able to return to work, even in pain, then he is no longer eligible for TTD benefits, but is relegated to SEB benefits if he is unable to earn 90% of his pre-accident wages.

*Vermilion Parish Police Jury v. Williams*, 02-12, pp. 5-6 (La.App. 3 Cir. 7/3/02), 824 So.2d 466, 470; s*ee also* La.R.S. 23:1221(3). "'The purpose of SEBs is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident.' *Pinkins v. Cardinal Wholesale Supply, Inc.,* 619 So.2d 52, 55 (La.1993)." *Banks v. Indus. Roofing & Sheet Metal Works, Inc.*, 96-2840, p. 8 (La. 7/1/97), 696 So.2d 551, 556.

> Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn [ninety percent (90%) or more of his average pre-injury wage] under the facts and circumstances of the individual case. *Freeman*[ *v. Poulan/Weed Eater*], 93-1530, at p. 7 [(La.1/14/94),] 630 So.2d [733,] at 739. "Th[is] analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that workers' compensation is to be liberally construed in favor of coverage." *Daigle v. Sherwin-Williams Co.*, 545 So.2d 1005, 1007 (La.1989).

> Once the employee's burden is met, the burden shifts to the employer who, in order to defeat the employee's claim for SEBs or establish the employee's earning capacity, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region. LA.REV.STAT.ANN. § 23:1221(3)(c)(i) (West Supp.1997); *Daigle*, 545 So.2d at 1009. Actual job placement is not required. *Romero v. Grey Wolf Drilling*

5

> *Co.*, 594 So.2d 1008, 1014-15 (La.App. 3d Cir.1992). The amount of SEBs is based upon the difference between the claimant's pre-injury average monthly wage and the claimant' proven post-injury monthly earning capacity. LA.REV.STAT.ANN. § 23:1221(3)(a) (West Supp.1997).

*Id.*

## *Did the WCJ Legally Err in Finding Walgreens Improperly Reduced Clark's Benefits?*

At the outset, we note, in accordance with La.R.S. 23:1221(3), that the burden of proof was initially on Clark to show that his work-related injury resulted in his inability to earn 90% of his pre-injury wages. *See Banks*, 696 So.2d at 556. However, because Walgreens agrees that Clark is owed SEBs, it essentially concedes Clark met his burden.

### 1. *Job Availability*

In its first assignment of error, Walgreens contends the WCJ failed to apply the correct legal standard in determining that it failed to satisfy its burden of proving job availability. Walgreens states that the WCJ "acknowledged the correct legal standard during his oral reasons for judgment when he noted 'an actual position available for that particular job at the time claimant received notification of the job's existence must be proved.'" Nevertheless, Walgreens submits that the WCJ failed to apply that standard when rendering judgment, instead looking to whether any "jobs were available to Clark at the time his benefits were reduced." On appeal, Clark does not address Walgreens' argument on this assignment of error. Instead he focuses on the merits of whether Walgreens proved that any jobs were available to him when it reduced his benefits.

In *Banks*, 696 So.2d at 557, when called upon to resolve a dispute amongst this state's courts of appeal regarding what an employer must do to discharge its

6

burden of proving job availability under La.R.S. 23:1221(3)(c)(i), the supreme

court held:

> [A]n employer may discharge its burden of proving job availability by establishing, at a minimum, the following, by competent evidence:
>
>> (1) the existence of a suitable job within claimant's physical capabilities and within claimant's or the employer's community or reasonable geographic region;
>>
>> (2) the amount of wages that an employee with claimant's experience and training can be expected to earn in that job; and
>>
>> (3) an actual position available for that particular job at the time that the claimant received notification of the job's existence.
>
> By "suitable job," we mean a job that claimant is not only physically capable of performing, but one that also falls within the limits of claimant's age, experience, and education, unless, of course, the employer or potential employer is willing to provide any additional necessary training or education.

*See also Chapman v. Coushatta Tribe of La.*, 12-1168 (La.App. 3 Cir. 3/6/13), 128

So.3d 1022, *writ denied,* 13-754 (La. 5/24/13), 117 So.3d 101. "Physician

approval [] is not required for the employer to meet its burden under *Banks." City*

*of Jennings v. Doucet*, 03-1099, p. 4 (La.App. 3 Cir. 2/4/04), 865 So.2d 1056,

1059-60.

A close examination of the entire reasons for judgment reveals that the WCJ

focused on whether Walgreens proved that there were any jobs available to Clark

"at the time they reduced benefits." In fact, the WCJ twice stated the incorrect

standard after having initially set out the proper standard. Thus, we find merit to

Walgreens' first assignment of error. Because, the WCJ erroneously applied the

law, we will conduct a de novo review of the record to determine whether

Walgreens proved that any jobs were available when Clark received notification of their existence.

Walgreens contends that the evidence shows Dr. Wolf released Clark to light-duty work. In addition, according to Walgreens, Ms. Primeaux identified several jobs that: (1) fit within Clark's limitations, (2) were in the Lake Charles area where Clark lived, and (3) were available at the time Clark was notified of their existence. Walgreens further submits that Clark admitted receiving notice of those jobs from Ms. Primeaux. While Walgreens acknowledges that Clark did not receive a single job offer, citing *Banks*, 696 So.2d at 556, it argues that "[a]ctual job placement is not required" in order for it to prove job availability.

Clark counters that, according to Ms. Primeaux's records, of the four potential jobs that were located for him between October 2013 and the time Walgreens reduced his benefits on January 29, 2014, the only one that Dr. Wolf approved was for the Customer Service Representative at Tower Loans, and that such approval was not given until February 3, 2014, after his benefits were reduced. Moreover, Clark submits that he actually applied at Tower Loans before January 24, 2012, but the position was not available at that time.[3]

The law requires that an employer prove job availability by a preponderance of the evidence. *See Banks*, 696 So.2d at 556. After a de novo review of the record in its entirety, we conclude that Walgreens met its burden of proving the availability of two jobs when it notified Clark of the same before it reduced his benefits on January 29, 2014.[4] The first job was as a receptionist at Volunteers of

_____

[3] According to Clark's job log, he applied for the Tower Loans' job on October 17, 2013.

[4] For purposes of Walgreens proving job availability, we have not considered the jobs at Approved Cash Advance or Hertz, which required Clark to drive, since he was prescribed narcotic medication by Dr. Wolf and Walgreens failed to fully explore, much less resolve at trial,

America, which Ms. Primeaux sent notice of to Clark on November 20, 2013.[5] The second was for a Customer Service Representative at Tower Loans, of which Ms. Primeaux sent notice to Clark on January 24, 2014. As noted previously, because "[p]hysician approval [] is not required for the employer to meet its burden under *Banks*," it does not matter that the Tower Loans' job was not approved by Dr. Wolf until after Walgreens reduced Clark's benefits. *Doucet*, 865 So.2d at 1059-60. The finding in the WCJ's oral reasons for judgment that "there were jobs within the claimant's physical capabilities that were identified" bolsters our conclusion that Walgreens proved job availability. Accordingly, we reverse the portion of the judgment that finds Walgreens failed to prove there were suitable jobs available to Clark as the evidence shows two such jobs were available.

## 2. *Residual Earning Capacity*

As noted in *Banks*, 696 So.2d at 556, an employer who wishes to pay its injured employee SEBs must "establish the employee's earning capacity" and the "amount of SEBs is based upon the difference between the claimant's pre-injury average monthly wage and the claimant's proven post-injury monthly earning capacity." As the supreme court further explained, the employer must establish "by competent evidence . . . the amount of wages that an employee with claimant's experience and training can be expected to earn." *Id.* at 557.

In *Bourque v. Riviana Foods, Inc.*, 611 So.2d 669, 671 (La.App. 3 Cir. 1992), we reversed the WCJ's award of disability benefits to claimant where the

---

the issue of when Clark stopped taking narcotics. Likewise, we have not considered any jobs that Ms. Primeaux identified after January 29, 2014, the date Walgreens reduced Clark's benefits. This would include the jobs at Security Finance, Enterprise Rent-A-Car, and Suddenlink.

[5] According to Clark's job log, he applied for the Volunteers of America job on November 20, 2013.

award was made without a determination of the claimant's continuing disability, finding that the WCJ "expressly withheld . . . pending future medical evaluation." Thereafter, we "explore[d] whether we as an appellate court may properly address the issues of Bourque's disability and entitlement to benefits under LSA-R.S. 23:1221, or whether we must remand to let a hearing officer make that determination." *Id.* at 673. We concluded that La.Const. art. 5, § 10 and § 16, and Section 1310.3 of the Louisiana Workers' Compensation Act "make clear the legislature's intent and the peoples' desire that a hearing officer and not a trial judge (and thus presumably not an appellate court) is vested with 'original, exclusive jurisdiction over all claims or disputes arising out of [the Workers' Compensation Act].'" *Id.* Since we were "confronted by the absence of a determination rather than a determination whose correctness is at issue," we determined that the proper course of action was to "remand to the hearing officer for a determination of Bourque's disability." *Id.*

In the instant case, the WCJ determined that Clark had a zero wage earning capacity. That determination was based upon its misapplication of the law and its resulting erroneous finding that Walgreens failed to prove job availability. Because we have found that Walgreens did prove that two jobs were available to Clark, there must now be a determination as to whether Walgreens met its concomitant burden of proving Clark's "post-injury monthly earning capacity." *Banks*, 696 So.2d at 556. This determination must be made by the WCJ and not by this court. As a result, we remand this matter in order for the WCJ to determine whether Walgreens proved Clark's residual earning capacity so as to justify its reduction of Clark's benefits from TTDs to SEBs at the rate of $244.89 per week

based on a wage earning capacity of $360.00. Upon remand, we direct the WCJ to revisit Clark's claim for penalties and attorney fees.

*Clark's Answer to Appeal*

Because of our decision to remand this matter, it would be premature for us to address the merits of Clark's claim that the WCJ erred in failing to award him penalties and attorney fees for Walgreens' reduction of his benefits and/or its termination of vocational rehabilitation services. Likewise, we will not address Clark's claim for additional attorney fees necessitated by this appeal.

**DECREE**

For the above reasons, the part of the judgment finding Walgreens failed to prove there were suitable jobs available to Clark is reversed, and this matter is remanded to the Office of Workers' Compensation for further proceedings consistent with this opinion. All costs of this appeal are assessed against Walgreens.

**REVERSED IN PART AND REMANDED.**

KENNETH CLARK

VERSUS

SEDGWICK CMS, WALGREENS DRUG STORE

**SAVOIE, Judge, concurs and assigns reasons.**

I agree with the majority's findings; however, I feel compelled to comment on the state of the law. As discussed in the majority opinion, there are three parts to the job availability test that an employer must prove to discharge its' burden. It is the third prong of this test that gives me pause. In my view, Walgreens should be made to prove more than that there is "an actual position available for that particular job at the time that the claimant received notification of the job's existence." *Banks v. Indus. Roofing & Sheet Metal Works, Inc.*, 96-2840, p. 11 (La. 7/1/97), 696 So.2d 551, 557. While the law is clear that actual job placement is not necessary, there should be a component of the test that includes whether the employee has a reasonable chance of placement in the position.

In the present case, the evidence shows that Mr. Clark was very proactive in his job search. He applied for over 100 jobs, most of which he found without the help of his vocational rehabilitation counselor, Jamie Primeaux. Ms. Primeaux testified that Mr. Clark was a model client who went above and beyond to find a job. He tried very hard to become a member of the job force. Despite this, Mr. Clark did not receive one job offer.

Ms. Primeaux's testimony regarding the current job market offers some insight. She testified that there is stiff competition from individuals who do not

1

have injuries and do not need modifications.  Therein lies the rub.  Mr. Clark is competing with a slew of healthy, able-bodied individuals that have inundated the job market due to the downturn in the economy, and it is clearly hampering his efforts to be hired.  The fact that Mr. Clark was injured during a weak economy is not his fault, and he should not be made to suffer for it.

To that end, an employer should be made to prove whether the employee has a reasonable chance of placement in the position for which he applied as part of the job availability test.  This would allow the courts to consider evidence regarding the job market and fully examine the reasons an employee hasn't received a job offer.