KEATY, Judge.
ItThe employer, Walgreen Company (Walgreens), appeals a judgment rendered by the workers’ compensation judge (WCJ) in favor of its former employee, Kenneth Clark, awarding him Supplemental Earnings Benefits (SEBs) equal to the amount it had previously paid him in Temporary Total Disability Benefits (TTDs) and reinstating his right to further vocational rehabilitation. Clark answers the appeal seeking a reversal of the WGJ’s denial of his .claim for penalties and attorney fees and seeking additional attorney fees for the work necessitated by this appeal. For the following reasons, we reverse in part and remand.
FACTS AND PROCEDURAL HISTORY
Clark' was employed' as an assistant manager at the Walgreens 'Drugstore in Moss Bluff in March 2012 when he injured his back while lifting a case-of radios that had been’ delivered to the store. He reported the accident to his manager who sent him for treatment at an urgent care facility. Thereafter, Clark sought treatment from his family physician who referred him to neurosurgeon "Dr. Erich Wolf. A March 22, 2012 MRI revealed that Clark had three ‘herniated lumbar discs. Dr. Wolf performed a discectomy of Clark’s extruded ' L2-3 disc in October 2012, which relieved somé of Clark’s pain; however, Clark reported that he still suffered from low back pain and radiculopa-thy. Clark later underwent two epidural steroid injections which provided him with temporary relief. On April 25, 2013, Dr. Wolf released Clark to work eight hours per day at light to minimal-medium duty. According to a January 8, 2014 office note, Dr. Wolf believed that Clark had reached maximum medical improvement and he did not recommend any further surgery. At that time, Dr. Wolf believed that Clark’s pain was “mostly arthritic [and] related to facet joints at the L4-5 level.’”
After his accident, Walgreens voluntarily paid Clark TTDs based on his.pre-injury average weekly wage of $727.37.[1] On January 29, 2014, Walgreens modified Clark’s indemnity benefits .from.TTDs to SEBs at the rate of $244.89. per week, based on. a wage earning capacity of $360.00. On March 11, 2014, Clark filed a Form 1008 Disputed Claim for. Compensation against Walgreens and -its workers’ compensation insurer, Sedgwick CMS, challenging the reduction of his benefits and seeking penalties and attorney fees.
*946 In October 2013, Walgreens sent Clark to vocational rehabilitation counselor Jamie Primeaux. Over the course of the next seven months, Ms. Primeaux located seven potential jobs for Clark which she submitted to Dr. Wolf for approval. According to Ms. Primeaux’s deposition testimony,[2] four of those jobs were available after she received approval by Dr. Wolf. Ms. Primeaux described Clark as a “model client”, who made “a full effort in the job search,” and often made more than the ten employment contacts that he was asked to make each week as part of his vocational plan. She noted that, in addition to following through on the seven, job leads .that she provided to him, Clark contacted over 100 additional prospective employers, but he did not receive any job offers. When asked, her opinion about the current job market, Ms. Primeaux expressed her belief that Clark was employable, but that there was stiff competition from individuals without work who did not have injuries and/or need modifications. On April 23, 2014, Ms. Primeaux notified Clark thát Walgreens would no longer be providing him with her services.
| ¡¡Trial was held on September 30, 2014, and Clark was the only witness to testify live. He acknowledged that Ms. Primeaux had notified him about the seven available jobs that she found for him and that he had applied for all seven of them. In fact, Clark stated that he had identified and applied for several of those jobs before being told about them from Ms. Primeaux. Clark explained that he'had applied for 105 jobs but had not received á single offer of employment. A job log that Clark prepared detailing his independent job search efforts was submitted as a joint trial exhibit. Clark testified that he always informed his potential employers that he was collecting workers’ compensation and that he had limitations as a result of his back injury. Upon questioning by the WCJ, Clark stated that he was a high school graduate.
The parties jointly submitted five trial exhibits, which included records from Dr. Wolf, the deposition of and records from Ms. Primeaux, and a job search log prepared by Clark. In addition, Clark submitted office notes regarding his treatment from Dr, Wolf, and: Clark’s attorney presented the WCJ with an affidavit detailing the time he expended in representing Clark in this matter. At the conclusion of the trial, the WCJ took the matter under advisement and directed the parties to file post-trial briefs. On November 21, 2014, the WCJ issued oral reasons for judgment finding that although a vocational rehabilitation counselor had identified “jobs within Clark’s physical capabilities,” “there was no showing that the jobs were available to Clark at the time his benefits were' reduced from Temporary Total Disability Benefits tb Supplemental Earnings Benefits on January 29, 2014.” Ás a result, the WCJ declared that based upon Clark’s zero wage-earning capacity, he was entitled to SEBs at his TTDs rate of $484.89, with Walgreens entitled to a credit for the amount of SEBs it paid Clark after it reduced |4his benefits. The WCJ further declared that Clark was entitled to further vocational rehabilitation. Clark’s' claim for penalties and attorney fees was denied based upon the WCJ’s determination that, although Walgreens “did not succeed in finding a position for Mr. Clark or identifying a position that was opened to him at the time they reduced benefits, they did have a reasonable basis to reduce the benefits.” Likéwise, while the WCJ found that Clark could benefit from further vocational rehabilitation, it declined to award *947 Clark penalties or attorney fees for Wal-greens’ termination of those services. The WCJ signed a written judgment in conformity with its oral reason reasons on December 30, 2014.
Walgreens now appeals, asserting that the WCJ failed to apply the correct legal standard in determining the availability of a job identified for Clark and that the WCJ committed legal error in not finding the reduction of Clark’s SEBs to be proper. Clark answers the appeal seeking a reversal of the WCJ’s denial of his claim for penalties and attorney fees and seeking additional attorney fees for the work necessitated by this appeal.
STANDARD OF REVIEW
“In general, an appellate court is to review factual findings issued in workers’ compensation matters according to the manifest error-clearly wrong standard.” Miller v. Blacktype Farms, 06-1202, p. 4 (La.App. 3 Cir. 3/7/07),- 952 So.2d 867, 870. “However, when there are errors of law asserted on appeal, the appellate court must make a determination whether the workers’ compensation judge’s ruling was legally correct.” Id. “It is well settled that reviewing courts will defer to a reasonable decision of the WCJ on a matter or question properly within its discretion. However, if the WCJ’s decision is based on an erroneous interpretation or application of law rather than a valid use of discretion, the |sincorrect decision is not entitled to deference.” Id. at 872. Moreover, “[i]f the review on appeal reveals a reversible error of law, a de novo review of the record must be conducted.” Perry v. Perry & Sons Vault & Grave Serv., 03-1519, p. 3 (La.App. 3 Cir. 5/12/04), 872 So.2d 611, 614.
DISCUSSION
Pursuant to Louisiana Revised Statute[s] 23:1221(1), TTD benefits are proper when the claimant is' unable to engage in any self-employment or occupation for wages. Once an injured worker reaches maximum medical improvement and is able to return to work, even in pain, then he is no longer eligible for TTD benefits, but is relegated to SEB benefits if he is finable to earn 90% of his pre-accident wages.
Vermilion Parish Police Jury v. Williams, 02-12, pp. 5-6 (La.App, 3 Cir. 7/3/02), 824 So.2d 466, 470; see also La.R.S. 23:1221(3). “ ‘The purpose of SEBs is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident.’ Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52, 55 (La.1993).” Banks v. Indus. Roofing & Sheet Metal Works, Inc., 96-2840, p. 8 (La.7/1/97), 696 So.2d 551, 556.
Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn [nrnety percent (90%) or more of his average pre-injury wage] under the facts and circumstances of the individual case. Freeman [v. Poulan/Weed Eater], 93-1530, at p. 7 [ (La.1/14/94),] 630 So.2d [733,]. at 739. “Th[is] analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet .that workers’ compensation is to be liberally construed in favor of coverage.” Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1007 (La.1989).
Once the employee’s burden is met, the burden shifts to the employer who, in order to-defeat the employee’s claim for SEBs or establish the employee’s earning capacity, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or- that the job was *948 available to the employee in his or the employer’s community or reasonable geographic region. LA.REV.STAT. ANN. § 23:1221(3)(c)(i) (West Supp.1997); Daigle, 545 So.2d at 1009. Actual job placement is not required. Romero v. Grey Wolf Drilling Co., 594 So.2d 1008, 1014-15 (La.App. 3d Cir.1992). The amount of SEBs is based upon the difference between the claimant’s pre-injury average monthly wage and the claimant’ proven post-injury monthly earning capacity. LA.REV.STAT.ANN. § 23:1221(3)(a) (West Supp.1997).

Id.

Did the WCJ ..Legally Err in Finding Walgreens Improperly Reduced Clark’s Benefits?

At the outset, we note, in accordance with La.R.S. 23:1221(3), that the burden .of proof was initially on Clark to show that his work-related injury resulted in his inability to earn 90% of his pre-injury wages. See Banks, 696 So.2d at 556. However, because Walgreens agrees that Clark is owed SEBs, it essentially concedes Clark met his burden.

1. Job Availability

In its' first assignment of error, Walgreens contends the WCJ failed to apply the correct legal standard in determining'that it failed to satisfy its burden of proving job' availability. Walgreens states that the WCJ “acknowledged'the correct legal standard during his oral reasons for judgment when he noted ‘an actual position available for that particular job at the time claimant received notification of the job’s, existence must be proved.’ ” Nevertheless, Walgreens submits that the WCJ failed to apply that standard when rendering judgment, instead looking to whether any “jobs were available to Clark at the time his benefits were reduced.” On appeal, Clark does not address Walgreens’ argument on this assignment of error. Instead he focuses on the merits of whether Walgreens proved that any jobs were available to him when it reduced his benefits.
In Banks, 696 So.2d at 557, when called upon to resolve a dispute amongst this state’s courts of appeal regarding what an employer must do to discharge its burden of proving job availability under La.R.S. 23:1221(3)(c)(i), the supreme court held:
[A]n employer may discharge its burden of proving job availability by establishing, at a minimum, the following, by competent evidence:
(1) the .existence of a suitable job within claimant’s physical capabilities and within- claimant’s or the employer’s community or reasonable geographic region;
(2) the amount of wages that an employee with claimant’s experience , and training can be expected to earn in that job; and
(3) an actual position available for that particular job at the time that the claimant received notification of the job’s existence.
By “suitable job,” we mean a job that claimant is not only physically capable of performing, but one that also falls within the limits of claimant’s age, experience, and education, unless, of course, the employer or potential employer is willing to provide any additional necessary training or education.
See also Chapman v. Coushatta Tribe of La., 12-1168 (La.App. 3 Cir. 3/6/13), 128 So.3d 1022, writ denied, 13-754 (La.5/24/13), 117 So.3d 101. “Physician approval [ ] is not required for the employer to meet its burden under Banks. City of Jennings v. Doucet, 03-1099, p. 4 (La.App. 3 Cir. 2/4/04), 865 So.2d 1056, 1059-60.
*949 A close examination of the entire reasons for judgment reveals that the WCJ focused on whether Walgreens proved that there were any jobs available to Clark “at the time they reduced benefits.” In fact, the WCJ twice stated the incorrect standard after having initially set . out the proper standard. Thus, we find merit to Walgreens’ first assignment of error. Because, the WCJ erroneously applied the law, we "will conduct a de novo review of the record to determine whether IsWalgreens proved that any jobs were available when Clark received notification of their existence.
Walgreens. contends that the. evidence shows Dr. Wolf released Clark to light-duty work. In addition, according to Wal-greens, Ms. Primeaux identified several jobs that: (1) fit within.Clark’s limitations, (2) were in the Lake Charles area where Clark lived, and (3) were available at the time Clark was notified of their existence. Walgreens further submits that Clark admitted receiving notice of those jobs from Ms. Primeaux. While Walgreens acknowledges that Clark did not receive a single job offer, citing Banks, 696 So.2d at 566, it argues that “[ajctual job placement not required” in order for it to prove job availability.
Clark counters that, according to Ms. Primeaux’s records, of the four potential jobs that were located for him between October 2013 and the time Walgreens reduced his benefits on January 29,2014, the only one that Dr. Wolf approved was for the Customer Service Representative, at Tower Loans, and that such approval was not given until February 8, 2014, after his benefits were reduced. . Moreover; Clark submits that he actually applied at Tower Loans before January 24, 2012, but the positipn wap not available at that time.[3]
The law requires'that an' employer prove job availability by a preponderance of the evidence. See Banks, 696 So.2d at 556. After de novo review of the record in its entirety, we conclude that Walgreens met its burden of proving the availability of two jobs when it notified Clark of the same before it reduced his benefits on January 29, 2014.[4] The first job was as a receptionist at Volunteers of America, which Ms. Primeaux sent notice of to Clark on November 20, 2013.[5] The second was for a Customer Service Representative at Tower Loans, of which Ms. Primeaux sent notice to Clark on January 24, 2014. As noted previously, because “[plhysician approval [ ] is not required for the employer to meet its burden under Banks,” it does not matter that the Tower Loans’ job was not approved by Dr. Wolf until after Wal-greens reduced Clark’s benefits. Doucet, 865 So.2d at 1059-60. The finding in the WCJ’s oral reasons for judgment that “there were jobs within the claimant’s physical capabilities that were identified” bolsters our conclusion, that Walgreens proved job availability. Accordingly, we reverse the portion of the judgment that finds Walgreens failed to prove, there were *950 suitable jobs available to Clark as the evidence shows two such jobs were available.

2. Residual Earning Capacity

As noted in Banks, 696 So.2d at 556, an employer who wishes to pay its injured employee SEBs must “establish the employee’s earning capacity” and. the “amount of SEBs is based upon the difference between the claimant’s pre-injury average monthly wage and the claimant’s proven post-injury monthly earning capacity.” As the supreme court further explained, the employer must establish “by competent evidence ... the amount of wages that an employee with claimant’s experience and training can be expected to earn.” Id. at 557.
In Bourque v. Riviana Foods,, Inc., 611 So.2d 669, 671 (La.App. 3 Cir.1992), we reversed the WCJ’s award of disability benefits to claimant where the |inaward was made without a determination of the claimant’s continuing disability, finding that the WCJ “expressly withheld ... pending future medical evaluation.” Thereafter, we “explore[d] whether we as an appellate court may properly address the issues of Bourque’s disability and entitlement to benefits under LSA-R.S. 23:1221, or whether we must remand to let a hearing officer make that determination.” Id. at 673. We concluded that La. Const, art. 5, § 10 and § Í6, and Section 23:1310.3 of the Louisiana Workers’ Compensation Act “make clear the legislature’s intent and the peoples’ desire that a hearing officer and not a trial judge (and thus presumably not an appellate court) is vested with ‘original, exclusive jurisdiction over all claims or disputes arising out of [the Workers’ Compensation Act].’” Id. Since we were “confronted by the absence of a determination rather than a determination whose correctness is at issue,” we determined that the proper course of action'was to “remand to the hearing officer for a determination of Bourque’s disability.” Id.
In the instant case, the WCJ determined that Clark had a zero wage earning capacity. That determination was based upon its misapplication of the law and its resulting erroneous finding that Walgreens failed to prove job availability. Because we have found that Walgreens did prove that two jobs were available to Clark, there must now be a determination as.to whether Walgreens met its concomb tant burden of proving Clark’s “post-injury monthly earning capacity.” Banks, 696 So.2d at 556. This determination must be made by the WCJ and. not by this court. As a result, we remand this matter in order for the'WCJ to determine whether Walgreens proved Clark’s residual earning capacity so as to justify its reduction of Clark’s benefits from TTDs to SEBs at the rate of $244.89 per week h,based on a wage earning capacity of $360.00. Upon remand, we direct the WCJ to revisit Clark’s claim for penalties and attorney fees.

Clark’s Answer to Appeal

Because of our decision to remand this matter, it would be premature for us to address the merits of Clark’s claim that the WCJ erred in failing to award him penalties and attorney fees for Walgreens’ reduction of his benefits and/or its termination of vocational rehabilitation services. Likewise, we will not address Clark’s claim for additional attorney fees necessitated by this appeal.
DECREE
For the above reasons, the part .of the judgment finding Walgreens failed to prove there were suitable jobs available to Clark is reversed, and this matter is remanded to the Office of Workers’ Compen *951 sation for further proceedings consistent with this opinion. All costs of this appeal are assessed against Walgreens.
REVERSED IN PART AND REMANDED.
SAVOIE, J., concurs and assigns written reasons.

. The parties stipulated to this amount at trial.

. Because of Ms. Primeaux’s unavailability for trial, the parties took her deposition on August 8, 2014, and her deposition and records were submitted as joint trial exhibits.

. According to Clark’s job log, he applied for the Tower Loans’ job on October 17, 2013.

. For purposes of Walgreens proving job availability, we have not considered the jobs at Approved Cash Advance or Hertz, which required Clark to drive,.-since he was prescribed narcotic medication by Dr. Wolf and Walgreens felled to fully explore,' much less resolve at trial, the issue of when Clark stopped taking narcotics; Likewise, we have not considered any jobs that Ms. Primeaux identified after January 29, 2014, the date Walgreens reduced Clark's benefits. This would include the jobs at Security finance, Enterprise Rent-A-Car, and Suddenlink.

.According to Clark's job log, he applied for the Volunteers of America job-on November 20, 2013.